146 N.J. Super. 278 (1977)
369 A.2d 942
BARBARA GEMIGNANI, PLAINTIFF-RESPONDENT,
v.
ROBERT GEMIGNANI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 23, 1976.
Decided January 11, 1977.
*279 Before Judges CRANE, MICHELS and PRESSLER.
Mr. Samuel R. De Luca, attorney for appellant.
Messrs. Feinberg, Dee and Feinberg, attorneys for respondent (Mr. Richard J. Feinberg on the brief).
PER CURIAM.
In this matrimonial action defendant Robert Gemignani appeals from those portions of the judgment of the Superior Court, Chancery Division, dealing with the distribution of assets acquired during his marriage to plaintiff Bargara Gemignani. No appeal is taken from the provisions of the judgment respecting the dissolution of the marriage, support and alimony (modified in defendant's favor on post-judgment application), custody and visitation and counsel fees awarded to the wife.
The equitable distribution problem here raised is one with which the trial courts deal regularly but to which the appellate *280 courts of this State have not yet directly addressed themselves. That problem is the appropriate distribution to be made of a marital residence which constitutes the primary asset of parties of relatively modest means and where the age and situation of the children of the marriage are such as to suggest the desirability of their being able to continue to live there with the custodial parent until their emancipation.
The factual context in which the issue here arose was substantially undisputed. The parties were married in 1958 and three children were born to them, now 13, 11 and 7 years of age. The wife, who has secretarial training and work history, has not, however, been employed since the eldest child was born. The husband is employed as a fireman by Union City where the parties, until their separation in 1973, resided in a two-family house which they purchased as tenants by the entirety in 1966. The wife has continued to reside there since the separation with the children, who have continued in her custody. Defendant's annual gross income from his municipal employment is approximately $14,000. He also works part time as a tractor-trailer driver, and his annual gross income from the source has been approximately $3,500 in the last several years.
Prior to trial the parties shared equally the balance in their joint checking and savings accounts and the wife obtained title to the family automobile. The remaining assets available for equitable distribution, in addition to the house, consisted of defendant's credit union balance of $1,724.82; his contributions to his pension fund which, less a loan and plus interest, amounted to $5,833.21, and 22 shares of General Motors common stock valued at between $1,000 and $2,000. The house was purchased, as noted, in 1966 for $23,500, with a down-payment of $5,000. Another $10,000 to $15,000 has been spent in improvements. The proofs as to the current market value of the house were, however, patently inadequate. The wife relied exclusively on the assessed valuation, $33,000. Despite the fact that Union City *281 was represented as assessing its real property at 100% of true value, we are satisfied that as a matter of economic reality, assessed valuation is not necessarily reflective of true market value. The husband testified to having been offered $45,000 for the house by a prospective purchaser several years prior to the trial. Neither party, however, contrary to the obligation imposed upon them by Rothman v. Rothman, 65 N.J. 219, 232-233 (1974), to fully cooperate in the court's task of fairly determining asset value, offered the testimony of a real estate expert or even a written real estate appraisal by an expert. It is, however, undisputed that the mortgage balance at the time of trial was approximately $12,500 and that the second apartment is rented to plaintiff's widowed mother for $170 a month, an arrangement which predates the parties' separation. There was some suggestion by the husband that that rental was below fair market value, although again no expert proofs were proffered by either party on that question.
The judgment here appealed from awarded ownership of the house to the wife and all of the other assets, namely, the credit union account, the pension fund and the common stock, to the husband. In addition, he was relieved of accumulated arrearages in the amount of $900 on the pendente lite support order previously entered.[1] The trial judge's expressed *282 basis for his distribution was his finding, first, that the wife should be permitted to continue to reside in the house with the children "* * * so as to be able to continue to properly rear the children and to take care of herself," and second, that the evident animosity and hostility between the parties realistically precluded the possibility of the more typical arrangement whereby title would be retained jointly until the youngest child's emancipation, the house then being sold, with an equal division between the parties of the net proceeds. We agree with both of these findings and are satisfied that post-divorce peace would be highly unlikely if the parties were required to maintain a continuing financial relationship for the next 10 or 11 years.
While we agree, however, with the trial judge's rationale, we cannot agree with the method by which he attempted to implement it, particularly in view of his apparent inclination to have divided the marital assets equally between the parties but for the circumstances involving the house. We certainly do not intend to suggest that a distribution which awards less than 50% of the distributable assets to a husband who is the sole wage earner is prima facie inequitable. We are, however, satisfied, without here repeating the relevant factors enumerated in Painter v. Painter, 65 N.J. 196, 211 (1974), that a fair consideration of all of these factors compels the conclusion that the distribution here was inequitable, and that the inequity resulted from legitimate concerns of the trial judge which could and should have been accommodated by distribution techniques that would have achieved a more equitable result.
As to the essential inequity of the distribution here, we note again that the value of the assets available for distribution, excepting the house and without regard to the $900 arrearage, is approximately $9,000. The equity in the house, were its fair market value equal to the assessed value of $33,000, would be approximately $20,500, resulting in a *283 total value of approximately $30,000 available for distribution and a consequent award of only approximately 30% to the husband.
There are, however, other considerations as well which constrain us to conclude that this distribution cannot stand. The first of these is based upon the already referred-to inadequacy of the proofs concerning the value of the house and the apparent probability that it does exceed the assessed valuation. More significantly, while the trial judge considered the fact that the marital residence is a two-family house in terms of the exacerbating effect that management of an income-producing property would have on the parties' future relationship if joint title were retained, he apparently did not consider the income-production aspect of the marital residence vis-a-vis asset value. If that income production factor were capitalized to reflect its present value, based on the improbable assumptions of a constant monthly rental of $170 for the next 11 years (the time of emancipation of the youngest child) and a 3-1/2% rate of interest of an annuity, the wife's share of equitable distribution, without regard to the additional personal income tax advantages she would enjoy as a result of the ownership, would be increased by some $16,000[2] and the husband's percentage of asset value (still based on the equation of the market value of the house and its assessed value) reduced to approximately 20%.
We do not view the essentially inequitable result here as mandated by the trial judge's quite proper determination that the wife should continue to reside in the house with the children without there being imposed upon the parties a need for the continuing communication and cooperation implied by joint ownership for an extended period of time. As Rothman v. Rothman, supra, 65 N.J. at 232, instructs, the trial judge, in dealing with equitable distribution problems, must engage in a three-step procedure. He must determine *284 first, what assets are distributable; second, what the value of those assets is; and third, how the assets should be equitably allocated. This third step must necessarily involve not only a determination of which spouse should be awarded which particular asset (what the trial court did here), but also a determination of what portion of the total value of the assets should be awarded to each spouse. One of the parties cannot be denied an equitable allocation simply because the primary asset is not or should not be liquidated.
Thus, as here, where the primary asset is the marital residence and the judge, for good reason, determines that it should neither be immediately sold nor that joint title should be returned pending a future sale, but rather that the wife should continue to reside therein for either an extended or indefinite period, the appropriate procedure to follow, after a proper valuation of all of the assets, is for the judge to determine the percentage of total value to which each spouse is equitably entitled. To the extent that assets awarded to the husband are insufficient to reach that percentage, title to the residence should be ordered conveyed to the wife subject to her giving a mortgage in favor of the husband in the amount of the difference. The terms of that mortgage should include interest at a rate to be fixed by the court, both interest and principal not payable until a designated future time  for example, six months following the emancipation of the youngest child. Such a mortgage technique, or some variation thereof, will provide sufficient flexibility to accommodate both the financial entitlements and the personal and family circumstances of the parties.
The final matter before us is the wife's motion for counsel fees on this appeal. The trial judge ordered the husband to pay toward the wife's counsel fees $2,000 plus costs in the amount of $280. This sum was in addition to the $1,500 she had already paid her attorney, $400 the husband had already paid her attorney and $1,735 ordered to be paid by the husband to her attorney on various pendente lite applications. The judgment in respect of counsel fees *285 was not appealed. We regard these allowances as more than generous, and accordingly the motion for additional fees here is denied.
Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] The pendente lite order provided for payments by the husband of alimony and support in the total amount of $110 weekly. He received his mother-in-law's rent but in turn paid for all the expenses of maintaining the house, including mortgage principal and interest, taxes, insurance, utilities and telephone. These expenses, according to defendant's trial testimony, are between $60 and $80 weekly. In addition, defendant was required to pay for the family's medical bills and certain specified automobile repairs. As of the time of the trial, defendant was current in respect of pendente lite support and alimony payments but was in arrears of approximately $900 on the house maintenance, medical and automobile expenses. The support provisions of the final judgment awarded the wife a total package of $130 a week ($40 for her support and $30 for each of the children) plus payment by the husband of all of the children's medical and dental expenses. That judgment was thereafter modified, pending this appeal, to reduce the wife's alimony to $20 a week because she had subsequently obtained employment.
[2] The court's calculation of present value is based on the Tables of Mortality and Life Expectancy, N.J. Rules of Court, Appendix I.