162 N.J. Super. 437 (1978)
393 A.2d 583
NATHAN BORODINSKY, PLAINTIFF-APPELLANT,
v.
SYLVIA BORODINSKY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 12, 1978.
Decided September 27, 1978.
*440 Before Judges LYNCH, CRANE and HORN.
Mr. Paul N. Silverman argued the cause for appellant (Messrs. Silverman, Elwell & Denstman, attorneys; Mr. Sam Denstman on the brief).
Mr. Morris M. Schnitzer argued the cause for respondent (Messrs. Schnitzer and Schnitzer, attorneys).
The opinion of the court was delivered by HORN, J.A.D.
Plaintiff Nathan Borodinsky appeals from a final judgment embodying, among others, provisions for equitable distribution and support for defendant and two of the parties' three children. Said judgment followed an earlier judgment of divorce granted to defendant wife on her counterclaim charging a marital offense on the part of the husband.
Plaintiff challenges the provisions of the said judgment which (1) awarded as equitable distribution "[o]ne half of all of the issued and outstanding capital stock of Belmont Brake System, Inc., and 531 Central Corporation * * *" to defendant wife and requiring plaintiff to forthwith deliver to her stock certificates of said corporations; (2) awarded the sum of $900 monthly for the support of defendant and the support of Louis, the youngest of the three children born of the marriage, and certain additional items of support.
*441 For the reasons later apparent, we need not relate the factual background in detail. That which is pertinent is that the parties were married in 1954. Three children were born of the marriage, whose ages in 1977 were Karen, 20; Linda, 18, and Louis, 15. The marriage of the parties apparently had been deteriorating for several years prior to the present action. Thus, in April 1971, after plaintiff allegedly beat defendant, the parties signed a separation agreement. However, the parties reconciled their differences within one week thereafter and continued to reside together, disregarding their agreement. They continued to live together until the end of December 1973, at which time plaintiff left the house. He presently lives in an apartment with another person in New York City, where he shares the living expenses.
On November 11, 1971 plaintiff formed Belmont Brake Systems, Inc. (Belmont Brake), of which he is sole stockholder, and through that corporation purchased an automobile repair business on Central Avenue in Newark.
Belmont Brake is primarily concerned with brake repairs, although since its inception it has engaged in transmission work and other types of automotive repairs. At some point in 1972 the company began to expand its operation under the trade name of Belmont Transmission Company, apparently in an attempt to attract more business. However, Belmont Transmission Company is not a separate entity and plaintiff maintains no records or employees other than those of Belmont Brake. But in 1974 Belmont Brake leased another building and tract of land at 531 Central Avenue to accommodate the expanded business.
On January 16, 1976 plaintiff purchased the land and building at 531 Central Avenue through a corporation which he apparently organized shortly before and of which he is the sole stockholder  the 531 Central Realty Corp. Although acquired under the name of 531 Central Realty Corp., the property was devoted exclusively to the business of Belmont Brake. It is not apparent from the record what the financial arrangements between the two corporations were *442  whether or not rent or other form of payment to Belmont Brake is made by 531 Central. However, it is clear that 531 Central Realty Corp. (531 Central) owns only the building and tract of land, whereas the automobile-repair business operated on that location is operated solely by Belmont Brake.
The purchase price of 531 Central Avenue was $12,500 and was financed entirely through a $15,000 loan. To secure the loan plaintiff or 531 Central gave a mortgage on the property acquired. The record does not indicate the maturity date of the loan, the payment schedule or the present outstanding balance.
Plaintiff raises no objection to the judgment provision awarding to defendant a 50% interest in the outstanding stock of Belmont Brake. His objection is directed to the manner of disposition  that is, in kind. He asserts that that form of disposition will inexorably lead to a deadlock and further proceedings under the New Jersey Business Corporations Act, N.J.S.A. 14A:1-1 et seq., which will redound to the disadvantage of the parties. The spectre of dissolution, N.J.S.A. 14A:12-7, and forced liquidation, N.J.S.A. 14A:12-9, is envisioned by him, especially since he contends the corporations are in a "marginal" financial condition. This would effectively choke off the prime source of plaintiff's income. The award of one-half of the stock in 531 Central is challenged not only for the same reason as the challenge to the disposition of the Belmont Brake stock but also because plaintiff claims that the 531 Central stock is not, under the law, eligible for equitable distribution. This is discussed infra.
The trial judge arrived at the conclusion to distribute the stock in kind because "[he could not] put a value on the business" because, in his opinion, the witnesses, including accountants, could not or did not supply sufficient information so that the judge's determination as to value would constitute more than conjecture. At the same time he recognized the alternative procedure under such circumstances of "[allocating] a money amount to the divorced wife, *443 [adjudicating] a judgment against the husband in that amount, and [giving] him an opportunity to finance the payment of that judgment."
Defendant suggests that the judge's decision was practical and expedient and would provide the parties "with an opportunity and the incentive to negotiate their own solution through a sale to one another * * *." Only as a last resort, she says, and failing all other efforts, will the court then direct a public or private sale of the corporations or their assets. We fear that defendant's view lacks pragmatism and a realistic interpretation of empirical events between the parties. The solution most certainly lays the seeds for further disputations and litigation which should and may be avoided.
It seems almost doctrinal that the elimination of the source of strife and friction is to be sought by the judge in devising the scheme of distribution, and the financial affairs of the parties should be separated as far as possible. If the parties cannot get along as husband and wife, it is not likely they will get along as business partners. Wetzel v. Wetzel, 35 Wis.2d 103, 150 N.W.2d 482, 485 (Sup. Ct. 1967). See also, Gemignani v. Gemignani, 146 N.J. Super. 278, 282 (App. Div. 1977).
Equitable distribution following divorce is governed by N.J.S.A. 2A:34-23. This statute authorizes the court to determine not only which assets are eligible for distribution and their respective values, but also how the allocation of the assets is to be made. Rothman v. Rothman, 65 N.J. 219, 232 (1974). There is no restriction on the court with regard to ordering distribution in kind of the eligible assets or awarding a monetary equivalent thereof. But, nonetheless, the judge should consider the former relationship of the parties and the fact that post-divorce peace is more conducive to the welfare of the parties. Cf. Gemignani, supra 146 N.J. Super. at 282.
Where the issue on appeal concerns which assets are available for distribution or the valuation of those assets, it *444 is apparent that the standard of review is whether the trial judge's findings are supported by adequate credible evidence in the record. Rothman, supra 65 N.J. at 233. See also, Perkins v. Perkins, 159 N.J. Super. 243, 247 (App. Div. 1978). However, where the issue on appeal concerns the manner in which allocation of the eligible assets is made, the standard of review is not so clearly established. In such cases it would seem reasonable to conclude that, as in alimony matters, an appellate court may determine whether the amount and manner of the award constituted an abuse of the trial judge's discretion. Esposito v. Esposito, 158 N.J. Super. 285, 291 (App. Div. 1978); Salmon v. Salmon, 88 N.J. Super. 291, 310 (App. Div. 1965).
The instant case is not one where the determination to distribute in kind may be said to have rested upon sufficient credible evidence. The reverse is true; the solution offered was rested on an asserted lack of sufficient credible evidence. The method of distribution, we hold, was an arbitrary and capricious one in the light of the situation of the parties and the distribution techniques which are available in order to achieve a reasonable result. Gemignani, supra 146 N.J. Super. at 282; 11 N.J. Practice (Finnerty, Marriage, Divorce and Separation) (3 ed. Supp. 1978), § 1338 at 237.
Although we have recognized the difficulty of evaluating interests in close corporations, Lavene v. Lavene, 148 N.J. Super. 267, 275 (App. Div. 1977), cert. den. 75 N.J. 28 (1977), such difficulty must not be equated with impossibility. As stated by Judge Pressler in Lavene v. Lavene:
The parties, of course, have the primary obligation of adducing those proofs which will enable the judge to make sound and rational valuations. As enjoined by Rothman v. Rothman, supra, 65 N.J. 219, at 233, the parties must fully cooperate in the court's difficult valuation task and, where necessary, must secure the assistance of appropriate experts to appraise business interests. Plaintiff here did not obtain expert assistance, and this is at least partially the cause of the problem here. An accounting expert experienced in the type of business here involved should have been produced by her to test *445 defendant's book value reliance and to assist the court in applying the accounting and valuation principles appropriate in evaluating the specific business interests here. The judge should not refrain from appointing his own expert as well, where the parties' proofs do not provide him with sufficient foundation and guidance. In this context we would not regard it as inappropriate, where circumstances warranted, for the judge to adapt the mechanism provided by the Corporation Act for the valuation of shareholders' interests by appointing an appraiser to make a nonbinding report to it of value. See N.J.S.A. 14A:11-8. In any event, counsel should advise the judge prior to the proceedings on the remand as to the additional proofs they plan to adduce on the question of the value of defendant's business interest on the date of the filing of the complaint and what, if any additional discovery is required. We point out that after the judge determines the value of defendant's interest in the corporation, he should then determine not only plaintiff's distributable share thereof but also the manner of her receipt of that share. The judge will, of course, be free to direct, if necessary to avoid impairment of the business itself, installment payments at such rate of interest and secured by such collateral as it deems appropriate. [148 N.J. Super. at 276]
See also Lavene v. Lavene, 162 N.J. Super. 187 (Ch. Div. 1978).
There may be cases where distribution in kind as awarded here may be entirely appropriate  but we cannot envision it as appropriate in the instant situation, where the parties are obviously unable to reach a private agreement. Although we have been referred to no cases in our State in which a solution similar to the instant one was decreed, there are several cases in other jurisdictions which have considered the problem. See Clark v. Clark, 487 S.W.2d 272 (Ky. Ct. App. 1972); Wetzel v. Wetzel, supra; Richards v. Richards, 44 Haw. 491, 355 P. 2d 188 (Sup. Ct. 1960); Brewster v. Brewster, 113 Wash. 551, 194 P. 542 (Sup. Ct. 1920).[1] *446 These cases have either upheld the trial judge's determination not to distribute in kind corporate shares or have reversed decisions ordering such distribution on the theme that it is unreasonable to place former spouses into a partnership status with each other. Further, it is recognized that the success of such corporations  and particularly closely held corporations  is usually dependent upon the business skills of the principal shareholder, and that a division of the shares could effectively destroy his or her incentive or ability to operate the business, thereby jeopardizing the continued operation of the corporate business and the stockholders' interests.

AS TO BELMONT BRAKE
Finding as we do that the distribution in kind of the shares was unreasonable, arbitrary and capricious, we reverse and remand the matter to the trial court for the purpose of conducting a hearing supplementing the hearings already held, following which the judge shall make an award to defendant of the dollar value of 50% of the shares of stock of Belmont Brake, and shall direct the method of liquidation of the payment therefor by plaintiff and also a method of securing defendant for the amount to be paid. See Lavene v. Lavene, supra 148 N.J. Super. at 276; Gemignani v. Gemignani, 146 N.J. Super. 278 (App. Div. 1977); Gerson v. Gerson, 148 N.J. Super. 194 (Ch. Div. 1977).

AS TO 531 CENTRAL REALTY CORP.
Plaintiff's position as to this corporation differs from his position as to Belmont Brake. Therefore it must be treated differently. In the absence of some fraudulent action on the part of plaintiff which was calculated to deprive defendant *447 of her share of a distributable asset, she has no interest in the stock of 531 Central. The trial judge reasoned that that corporation was so "interlocked" with Belmont Brake that there was no practical way to distinguish the two corporations. We do not agree.
The termination date for determining eligible assets is also the date for valuation of those assets. Smith v. Smith, 72 N.J. 350, 361-362 (1977). Any increase or decrease in the value of the eligible assets should be reflected in the alimony award, if at all, and not in the equitable distribution of the assets:
In many cases the property in the hands of each party will have changed in nature and value between the date of the separation agreement and the date of the divorce decree. If the changes are minor, they can either be ignored or any unduly adverse effects that a judgment of equitable distribution might have on the present circumstances of either party may be compensated for by adjusting the alimony provisions: that is, a husband whose assets have diminished since the date of the agreement may still be required to turn over to his wife her equitable share of the property he then held, but since his present circumstances may then be somewhat straitened compared to hers, this factor may be taken into consideration in relation to the award of alimony. Conversely, a husband whose assets have increased since the date of the separation agreement will not be required to divide the increase with his wife, but his present favorable situation will be a factor that may be considered in setting alimony. We can conceive of situations in which the change in one party's financial position may be so great that measures such as these would not be sufficient to do mutual justice; in such a case, a party must be permitted to apply to the court for appropriate equitable consideration of the special circumstances involved. [Footnote omitted.] The distribution, though made belatedly, must still be equitable. [Smith v. Smith, supra at 362]
See generally Ross v. Ross, 151 N.J. Super. 486 (Ch. Div. 1977); Grayer v. Grayer, 147 N.J. Super. 513 (App. Div. 1977).
Here 531 Central Avenue was acquired not only after the filing of the complaint for divorce, but well after the judgment of divorce itself. Indeed, the purchase of the premises *448 was financed entirely through a loan to plaintiff or 531 Central.
Defendant contends that the trial judge's order should be upheld because plaintiff usurped a corporate opportunity accruing to Belmont Brake by forming 531 Central and purchasing the property. Assuming, arguendo, that this frail plea has some merit, it nonetheless fails to recognize that the valuation date for marital assets in this case is the date the complaint was filed. At that time there was no 531 Central nor, on the proofs offered below, was there any "corporate opportunity." Very conceivably, the "corporate opportunity" did not arise until January 16, 1976  the date of the purchase of the property. Therefore defendant does not have any standing to complain that plaintiff wrongfully diverted an opportunity of Belmont Brake which would have increased its value, since she would not have been entitled to share in that increased value anyway.
Accordingly, we find that the judge erred in awarding equitable distribution of the shares in 531 Central Realty Corp.

AS TO SUPPORT
Support and equitable distribution are intimately related. Painter v. Painter, 65 N.J. 196, 218 (1974). As in that case, in view of our decision covering equitable distribution it is appropriate that the matter of support be reopened for review by the trial judge. We would suggest that the judge make appropriate findings of fact as to the elements to be considered in making an award.

DISPOSITION
The provisions of the judgment as noted are vacated. The cause is remanded for supplementary hearing, findings and determination of the issues as noted herein. We do not retain jurisdiction.
NOTES
[1] Hutchins v. Hutchins, Vt., 376 A.2d 744 (Sup. Ct. 1977), suggests that a distribution of shares in kind does not constitute an abuse of discretion where "other assets involved were not sufficient to achieve an equitable division without some sort of stock division." 376 A.2d at 746. However, there the court recognized the public policy of avoiding the creation of such ex-spousal partnerships but found in that case "the other assets involved were not sufficient to achieve an equitable division without some sort of stock division." In addition, the court ameliorated the impact of its judgment by giving the husband an option to purchase the wife's shares.