**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0053-19T4

J.P.,[1]

      Plaintiff-Respondent,

v.

M.P., n/k/a M.K.,

      Defendant-Appellant.

_____

> Submitted October 20, 2020 — Decided October 29, 2020
>
> Before Judges Haas and Mawla.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FM-18-0919-18.
>
> Fox Rothschild LLP, attorneys for appellant (Eric S. Solotoff, of counsel and on the briefs; Lindsay A. Heller, on the briefs).
>
> Pamela M. Cerruti, attorney for respondent.

PER CURIAM

---

[1] We utilize initials to protect the parties' privacy.

Defendant M.K., formerly M.P., appeals from a June 19, 2019 dual final judgment of divorce entered following a trial, and challenges an August 9, 2019 order denying her motion for reconsideration. We affirm.

Judge Haekyoung Suh tried this matter during three days in May 2019, in which one-hundred and twenty-seven exhibits were admitted into evidence. The judge noted defendant had retained and terminated four attorneys, and interviewed fifteen attorneys in person and eighty-five by telephone, yet defendant tried the case herself having retained counsel to serve only as a consultant.

Judge Suh also handled the matter pendente lite and entered a January 18, 2019 order adjudicating defendant's motion for pendente lite support. Defendant filed the motion herself and retained an attorney to argue it. The judge denied defendant's request that plaintiff pay her direct pendente lite support and made the following findings:

> The parties establish[ed] the marital status quo was maintained through joint access to marital accounts in which monies from plaintiff's base salary and hefty annual bonus were placed. Each party has now transferred a significant portion of this money to their personal accounts. They can carry on as they did during the marriage, each now with access to the same money, but in their respective personal accounts.

A-0053-19T4

> Further, with defendant having access to $540,000 in her personal account, she fails to demonstrate a need for pendente lite support. On top of the $540,000 . . . , she also received a $[2000] line of credit per month on an American Express Card . . . to fund her and the children's expenses.
>
> To the extent the parties consume these funds, [they] may file motions to liquidate additional assets to meet their needs . . . .

The judge restrained the joint brokerage and savings accounts and ordered plaintiff to "use the funds he transferred to his personal account, his base-salary wages, and upcoming bonus monies to pay the bills of the house." Specifically, the judge ordered plaintiff to pay the "utilities, property taxes, lawn care, home security system, car insurance, medical insurance, dental insurance, homeowner's insurance and the children's extracurricular expenses." The trial occurred four months after entry of the pendente lite order.

At the outset of her written decision, the judge addressed the parties' credibility. She found plaintiff more credible than defendant, noting defendant's testimony was inconsistent and she filed inaccurate Case Information Statements (CISs) claiming the joint marital expenses as her own. The judge found the CIS defendant relied upon at trial "undermined her credibility" and a CIS she filed one month before the trial "unreliable."

3

The parties cohabitated before the marriage and were married for nearly twenty years at the time plaintiff filed the complaint for divorce in May 2018. Four children were born of the marriage who were unemancipated. Because of defendant's issues with alcohol, which led to a DUI conviction and mental instability, plaintiff received custody of the three younger children. The eldest child had a fractured relationship with plaintiff and remained with defendant pendente lite before leaving for college in Fall 2019. Ultimately, the judge awarded the parties joint legal and physical custody, and set an alternating week parenting schedule for the three younger children requiring plaintiff to transport them for parenting time until defendant's license was restored.

The parties were relatively young at the time of trial; plaintiff was forty-six and defendant was forty-eight years of age. The judge found plaintiff was the breadwinner, earning a gross income of $1,933,404 in 2018, which comprised of a base salary, bonus, and equity awards. His 2018 net income was $1,079,733, and his net earned income was $44,347 per month. Defendant was a homemaker throughout the marriage. The judge concluded the parties enjoyed "an upper class standard of living during the marriage," characterized by ownership of a $1.4 million mortgage-free marital home, ownership of three vehicles "paid without financing," membership at a country club enjoyed by

4

plaintiff, and "[d]efendant['s] regular[] purchas[es of] luxury shoes and shop[ping] incessantly, buying clothes, belts and jewelry." The judge credited plaintiff's testimony that the family budget was $27,848 per month or $334,176 per year and the children's share of the expenses was $87,410 per year.

Weighing the N.J.S.A. 2A:34-23.1 statutory factors, the judge ordered an equal equitable distribution of the marital assets, which totaled in excess of $10 million as of the date of complaint. The judge ordered defendant could continue to reside in the marital residence and bear its expenses until the youngest child graduated from elementary school, when the residence would be sold, and the proceeds divided equally. The judge ordered plaintiff to retain a 2016 Jeep Grand Cherokee and transfer title to a 2011 Chevrolet Suburban operated by defendant to her, in addition to a 2018 Jeep Grand Cherokee operated by the parties' son. The judge ordered defendant's diamond stud earrings and Cartier bracelets sold and the proceeds equally divided because "[n]either party wished to retain" them.

The judge considered the N.J.S.A. 2A:34-23(b) statutory factors and awarded defendant non-taxable limited duration alimony for thirteen years and four months of $13,195 per month. The judge found plaintiff and the three

younger children had needs of $33,168 per month, leaving a surplus of $11,179.

The judge noted each party would

> walk away from the marriage with over four million dollars and no liabilities. . . . While the parties derive income through investment of assets, only plaintiff has the skill to create more wealth. Defendant has no ability to invest money and once she receives her equitable distribution, she will not know how to make her investments grow without a financial advisor.

The judge also noted the "court denied pendente lite support since defendant had transferred over $500,000 from the parties' joint . . . [b]ank account into accounts she exclusively controlled. Plaintiff however continued to pay the Schedule A expenses, including the 2018 taxes from his personal account since the court froze the [parties' brokerage account]."[2]

Addressing defendant's needs, the judge noted

> [d]efendant requested half of plaintiff's income going forward. Her most recent self-prepared CIS is bloated and lacks credibility. To set the appropriate amount of alimony the court relies on the statement of expenses set forth in plaintiff's most recent CIS and defendant's July 19, 2018 CIS, which was prepared with the assistance of counsel.

The judge reduced defendant's Schedule A expenses because certain line items were either unexplained or not necessary "given the excellent condition of the

---

[2] The record reveals the parties owed federal taxes of $127,610 for 2018.

6

former marital residence . . . ." She also reduced defendant's Schedule B expenses by $4200 "for a car payment she does not have" and because defendant would be operating the 2018 Jeep, which did not require repair, and "the Suburban . . . will likely be junked." The judge stated: "Defendant claims she needs $38,031 per month to cover her Schedule C expenses. Many of her line items are unsupported, inflated, redundant, exaggerated, or incorporated into child support." Regarding certain Schedule C expenses, the judge commented "[i]t is undisputed that defendant did not participate in golf club memberships or sports during the marriage[.]" The judge "trim[med] defendant's . . . Schedule C expenses so they align with the reasonable standard of living during the marriage and, where applicable, match plaintiff's reported expenses." Notably, the judge's Schedule C analysis included a savings component for defendant equivalent to the entire sum that plaintiff's CIS indicated the parties set aside as savings per month during the marriage.

The judge concluded defendant did not require permanent alimony because of the length of the marriage, the parties' relatively young ages, the "tremendous savings cushion" created by the "over $4.5 million" in equitable distribution defendant would receive and because "[d]efendant can begin

7

drawing on her significant retirement assets, including 401(k) and IRAs when she turns [sixty-two]" at the conclusion of the limited duration period.

The judge calculated child support using the Child Support Guidelines, designating defendant the parent of primary residence, and thereafter reduced child support to account for the parties' shared controlled expenses, which yielded a figure of $340 per week. Then the judge applied the statutory child support factors and increased the child support because of "the children's extensive expenses as detailed by plaintiff's testimony . . . and the great disparity in the parties' earning capacities[.]" She noted "[p]laintiff proposed that the parties be responsible for the total $87,410 child support expenses in the proportion of [seventy-five percent] plaintiff and [twenty-five percent] defendant." However, according to the guidelines, the judge found plaintiff's proportionate share of the income to be eighty-five percent and added $1140 per week for a total child support figure of $1480 per week. Although the children each had more than $100,000 in their respective 529 accounts, the judge ordered plaintiff to cover "100% of any" uncovered college expense.

Each party sought counsel fees. The judge denied the requests and noted defendant failed to submit a certification of services.

A-0053-19T4

Each party filed a motion for reconsideration of the final judgment. The judge granted plaintiff's and denied defendant's motion. Relevant to this appeal, the judge reduced alimony to $12,845 per month because the figure set at trial included the children's orthodonture expenses. Defendant, represented by counsel, filed a new CIS, and also sought reconsideration of the alimony award arguing the savings component was inadequate and that the alimony did not allow her a standard of living comparable to plaintiff. Defendant requested the limited duration be extended to eighteen years and eleven months, and also sought rehabilitative alimony. The judge denied defendant's requests for the same reasons she explained in the trial decision and rejected defendant's request for rehabilitative alimony "[d]ue to the reservations expressed by defendant in following through with employment and educational programs, and the times at which defendant contradicted herself stating she wishes to be a full-time mother."

The judge also granted in part plaintiff's motion to reconsider the child support. Plaintiff argued the parties' eldest child was above the guidelines age. The judge agreed and recalculated the guidelines using the three younger children, applying the same methodology expressed in the trial decision, which reduced the guidelines support amount to $306 per week. The judge also

A-0053-19T4

adjusted the child support by deducting the expenses for the 2018 Jeep holding "defendant [is] solely responsible for any payments related thereto, now being the owner of that vehicle[, and that t]hese Schedule B expenses were already included in her alimony award."  The judge concluded the children's supplemental expenses were $81,610 and after deducting the guidelines level child support, plaintiff's eighty-five percent share of the remaining expenses was $55,843.30 per year, or $1074 per week, for a total weekly child support obligation of $1380.

Defendant also sought reconsideration of the child support arguing it did not include the country club membership, school lunches, spending money, gifts, and travel expenses for the parties' eldest child.  The judge rejected the argument, noting child support was calculated based on information provided in plaintiff's testimony and

> defendant offered only a defective CIS at the time. . . . [Regardless, t]he court considered club and camp fees during the initial calculations . . . but declined to incorporate those costs without any proof as to the actual expenses incurred.  Defendant failed to offer that proof at the time of trial when she had the opportunity. In any case, she again fails to provide such proof.

Defendant also sought reconsideration of the decision to sell and split the proceeds of the diamond earrings and Cartier bracelets, and instead sought to

A-0053-19T4

keep the items. The judge denied the motion, finding defendant testified she did not wish to retain the jewelry.

Defendant raises the following arguments on appeal:

POINT I

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S REQUEST FOR PENDENTE LITE SUPPORT AND ORDERING MINIMAL LIMITED DURATION ALIMONY, REQUIRING HER TO USE MARITAL ASSETS FOR SUPPORT IN LIEU OF PLAINTIFF'S SUBSTANTIAL INCOME.

A. CONTRARY TO N.J.S.A. 2A:34-23(C), THE TRIAL COURT'S ALIMONY AWARD PROVIDES PLAINTIFF WITH A SUPERIOR ABILITY TO MAINTAIN THE MARITAL STANDARD OF LIVING AS COMPARED TO DEFENDANT WHILE DISREGARDING ITS OWN FACT FINDINGS AS TO MARITAL LIFESTYLE.

B. THE TRIAL COURT'S FAILURE TO INCLUDE PLAINTIFF'S PRESENT INCOME IN THE ALIMONY CALCULUS IS REVERSIBLE ERROR.

C. THE TRIAL COURT'S AWARD OF LIMITED DURATION ALIMONY CONSTITUTES REVERSIBLE ERROR FOLLOWING A MARRIAGE THAT WAS [NINETEEN] YEARS AND OVER [TWENTY]-YEAR RELATIONSHIP OF FINANCIAL DEPENDENCY.

D. THE TRIAL COURT FAILED TO PROVIDE DEFENDANT WITH A SAVINGS COMPONENT CONSISTENT WITH THE MARITAL LIFESTYLE.

E. THE TRIAL COURT FAILED TO QUANTIFY THE AMOUNT OF INCOME EARNED FROM DEFENDANT'S EQUITABLE DISTRIBUTION AWARD WHEN CALCULATING ALIMONY WHILE UTILIZING SAME AS A BASIS THEREOF.

F. THE TRIAL COURT FORCED DEFENDANT TO SPEND DOWN HER SHARE OF MARITAL ASSETS IN LIEU OF PENDENTE LITE SUPPORT DESPITE PLAINTIFF POSSESSING THE ABILITY TO PAY WITH HIS MILLIONS OF DOLLARS IN POST-COMPLAINT INCOME.

G. THE TRIAL COURT CANNOT FORCE DEFENDANT TO MAINTAIN THE MARITAL RESIDENCE WITH HER INEQUITABLE ALIMONY AWARD WHILE GRANTING PLAINTIFF A DELAYED DISTRIBUTION OF THE ASSET.

H. THE TRIAL COURT'S REDUCTION OF DEFENDANT'S AUTO EXPENSES AND FORCING HER TO DRIVE [THE ELDEST CHILD'S] VEHICLE MUST BE REVERSED.

I. TO THE EXTENT THE COURT'S AWARD OF ALIMONY WAS IMPROPER, SO TOO WAS ITS ORDER REGARDING LIFE AND DISABILITY INSURANCE.

12

POINT II

THE TRIAL COURT'S HOLDINGS AS TO EQUITABLE DISTRIBUTION OF JEWELRY AS THOUGH OUR STATE IS ONE OF COMMUNITY PROPERTY RATHER THAN EQUITABLE DISTRIBUTION MUST BE REVERSED.

POINT III

THE TRIAL COURT'S RECONSIDERED CHILD SUPPORT AWARD CONSTITUTES REVERSIBLE ERROR BECAUSE THE COURT FAILED TO MAKE ANY FINDINGS OF FACT OR CONCLUSIONS OF LAW AS TO [THE ELDEST CHILD'S] REMOVAL FROM THE GUIDELINES CALCULATION AND HIS EXPENSES AT COLLEGE.

POINT IV

THE TRIAL COURT'S DENIAL OF DEFENDANT'S REQUEST FOR COUNSEL FEES WITHIN THE TRIAL DECISION AND RECONSIDERATION ORDER CONSTITUTES REVERSIBLE ERROR.

Our review of a trial court's fact-finding in a non-jury case is limited. Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence. Deference is especially appropriate when the evidence is largely testimonial and involves questions of credibility." Ibid. (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). While we owe no special deference to the judge's legal conclusions, Manalapan Realty, L.P. v.

13                                                          A-0053-19T4

Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995), we do owe substantial deference to the Family Part's findings of fact because of that court's special expertise in family matters. Cesare, 154 N.J. at 412. Therefore, we will only reverse the judge's decision when it is necessary to "ensure that there is not a denial of justice because the family court's conclusions are clearly mistaken or wide of the mark." Parish v. Parish, 412 N.J. Super. 39, 48 (App. Div. 2010) (citations omitted).

We apply an abuse of discretion standard when reviewing challenges to the amount and allocation of equitable distribution. Borodinsky v. Borodinsky, 162 N.J. Super. 437, 443-44 (App. Div. 1978). Similarly, a trial court's rulings on alimony, child support, and the security necessary to assure the payment of these obligations are discretionary and should not be overturned unless the trial court abused its discretion, failed to consider applicable legal principles, or made findings unsupported by the evidence. Gordon v. Rozenwald, 380 N.J. Super. 55, 76 (App. Div. 2005); Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012); S.W. v. G.M., 462 N.J. Super. 522, 535 (App. Div. 2020).

Likewise, we will disturb an attorney's fee decision "only in the clearest case of abuse of discretion." Yueh v. Yueh, 329 N.J. Super. 447, 466 (App. Div.

2000). We also review a decision on a motion for reconsideration under the same standard. Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996).

Applying these principles, we conclude that Judge Suh's factual findings are fully supported by the record and, in light of those facts, her legal conclusions are unassailable. She carefully reviewed the relevant evidence and fully explained her reasons in a logical and forthright manner, applying the relevant statutory factors to adjudicate every issue. Neither the record nor defendant's arguments reveal anything so "wide of the mark" as to require our intervention. Parish, 412 N.J. Super. at 48.

We add that defendant's arguments under points I(C), I(G), I(I), II, III, and IV lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We briefly address her remaining arguments.

Defendant's alimony-related arguments in I(A) and I(B) are misplaced. Contrary to her claims, the judge followed the law in describing the marital lifestyle, quantifying it, and attributing the marital expenses to the appropriate party. S.W., 462 N.J. Super. at 532-34. Defendant's non-taxable alimony alone equaled forty-six percent of the marital family budget. With the addition of child support, defendant received sixty-seven percent of the family budget. After paying defendant alimony and child support, plaintiff has insufficient

A-0053-19T4

funds from his net earned income to meet his portion of the budget along with his eighty-five percent share of children's expenses and all uncovered college costs. Plaintiff must expend his share of the assets and supplemental income to meet his and the children's needs.

Furthermore, the judge clearly used plaintiff's 2018 income, specifically his monthly net average earned income set forth in his CIS, to calculate his support obligations. Considering the trial occurred in May 2019, before plaintiff's total compensation for that year was known, it was not an error for the judge to rely on his last full year's-worth of income. Contrary to defendant's claims, the judge did not use plaintiff's six-year average income to determine the amount of alimony. Rather, a careful reading of the judge's decision shows she described the amount and nature of plaintiff's income from 2013 to 2018 to explain why he had the ability to pay.

We reject defendant's arguments in points I(D) and I(E) relating to the savings component and earnings from equitable distribution. At the outset, we note that as the proponent of the argument, the burden fell on defendant to articulate to the judge the amount of savings to be included in the alimony award and the earnings she would derive from equitable distribution. N.J.R.E. 101(b)(1).

A-0053-19T4

Defendant testified she believed the parties saved approximately $60,000 per month stating: "That's how we built [the] . . . brokerage account." However, she presented no evidence the account balance increase was due to savings. On cross-examination, she could not explain how the $60,000 figure was possible, considering it exceeded plaintiff's salary. Instead, defendant claimed the savings figure, reported as $64,425.75 per month in her November 16, 2018 CIS, was formulated on the advice of an attorney.

We have stated that savings may be considered to protect "income being derived from alimony[,] . . . to meet needs in the event of a disaster, to make future major acquisitions, . . . and for retirement." Lombardi v. Lombardi, 447 N.J. Super. 26, 39 (App. Div. 2016). However, "[t]he most 'appropriate case' in which to include a savings component is where the parties' lifestyle included regular savings." Ibid. (citations omitted).

In addition to awarding defendant a substantial equitable distribution, the judge secured alimony by requiring plaintiff to maintain life and disability insurance obligations, addressing most of the grounds justifying a savings component according to Lombardi. The judge's decision noted that the parties' brokerage account balance increased from $9011.85 in 2012 to $3,984,185 in 2018 and their checking and savings accounts decreased from $874,826 in 2012

A-0053-19T4

to $116,290 in 2017. However, these figures were not indicative of "regular savings" as a characteristic of the marital lifestyle as envisioned in Lombardi. Moreover, to the extent they were, these savings occurred during the last third of the marriage and did not characterize how the parties handled their finances throughout the marriage. Also, defendant did not prove the account balances were the result of regular savings as opposed to passive growth from market appreciation. Notwithstanding, the judge included a savings component in alimony award.

The judge also considered the potential income to be derived from equitable distribution. However, she concluded she could not speculate as to defendant's earnings on her share of equitable distribution because defendant would require the assistance of a financial professional. This conclusion was reasonable, considering we previously cautioned trial courts not to assume the rates of return from investments held by a supported spouse inexperienced in investing when calculating alimony. Overbay v. Overbay, 376 N.J. Super. 99, 110-13 (App. Div. 2005).

We also reject defendant's argument in point I(F), which asserts the judge erred by not awarding her pendente lite support. As we noted, although the judge did not order a direct payment of pendente lite support, she did compel

plaintiff to pay expenses on defendant's behalf. Furthermore, considering the pendente lite period was but a few months and with defendant having access to the $540,000 she took from a marital account, she failed to demonstrate a need for pendente lite support.

Finally, we reject the argument raised in defendant's point I(H) regarding the 2018 Jeep. The parties' son does not own this vehicle; it was an asset subject to equitable distribution. Considering the son was away at college and the parties operated similar vehicles during the marriage, it was not an abuse of discretion to award defendant a newer Jeep in equitable distribution.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

19