**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4296-19

JANUSZ KADZIELAWA,

      Plaintiff-Respondent/
      Cross-Appellant,

v.

MARIA KADZIELAWA,

      Defendant-Appellant/
      Cross-Respondent.

_____

> Argued October 6, 2021 – Decided August 18, 2022
>
> Before Judges Hoffman and Susswein.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FM-16-0338-09.
>
> Adamo Ferreira argued the cause for defendant-appellant/cross-respondent.
>
> Jeffrey J. Trapanese argued the cause for plaintiff-respondent/cross-appellant (Weiss, Tom & Trapanese, LLC, attorneys; Jeffrey J, Trapanese, on the briefs).

PER CURIAM

This appeal arises from a contentious divorce that has led to several post judgment disputes. Defendant, Maria Kadzielawa (former wife), appeals a July 2020 Family Part order granting plaintiff Janusz Kadzielawa's (former husband's) motion to enforce litigant's rights. The trial court found that defendant acted in bad faith by withdrawing more from plaintiff's individual retirement account (IRA) than was authorized under the explicit terms of a settlement agreement. The order directs defendant to refund the overage to plaintiff's IRA. The trial court also rejected defendant's cross-motion in which she contends that she is entitled to an additional $11,000 regarding a loan against plaintiff's retirement account. Both parties challenge the attorney fee award. After carefully reviewing the record in light of the applicable legal principles, we affirm the trial court's rulings with respect to parties' motions to enforce litigants' rights. We are constrained, however, to remand the matter for the trial court to reconsider the attorney fee award and to make findings regarding the factors set forth in Rule 5:3-5(c).

I.

We discern the following facts and procedural history from the record. Plaintiff and defendant married in 1992 and divorced in 2010. An amended

A-4296-19

judgment of divorce was filed in October 2010. The parties thereafter returned to court on numerous occasions to resolve various post-judgment disputes.

In May 2018, the parties agreed to resolve their outstanding issues in a handwritten settlement agreement. At the time of that agreement, defendant had a Roth IRA and plaintiff had a 401(k) through his employer.[1] The settlement agreement expressly provided that plaintiff was to pay defendant $40,000 by means of a rollover transfer from his 401(k), as well as the amount due for her share of the coverture value of their retirement accounts. The settlement agreement further explicitly provided that plaintiff was responsible for "100% of the value of the loan against the 401(k) (approximately $22,000 of which $11,000 was previously agreed to set off against [d]efendant's share)."

On June 4, 2018, the parties executed a Qualified Domestic Relations Order (QDRO). Section eight of that order set forth the benefits that were to be paid to the alternate payee, i.e., defendant. Specifically, the QDRO stated that as alternate payee, defendant is "to be allocated $30,525.28 as of September 5, 2008. This amount is to be adjusted for gains and/or losses from September 5,

---

[1] Plaintiff's 401(k) was terminated because his employer permanently closed business. The funds contained in the 401(k) were rolled into a Safe Harbor IRA administered by Matrix Trust Co.

A-4296-19

2008[,] to the date of distribution." That section of the QDRO also credited defendant an additional $40,000. Accordingly, defendant was entitled to receive $70,525.28 plus the gains and/or losses on the $30,525.28 allocation (the coverture share).

A consent order filed by the court on March 4, 2019, ratified and memorialized the parties' May 2018 handwritten settlement agreement. When that consent order was filed, plaintiff's Safe Harbor IRA account with Matrix contained $172,998.17.

On April 26, 2019, defendant filled out an IRA distribution request form for plaintiff's IRA. Neither defendant nor her attorney advised plaintiff or his attorney of this distribution request. Defendant requested "50% + $40,000" from plaintiff's IRA. Matrix complied with defendant's request and paid to defendant half of the $172,998.17 in the account ($86,561.38) plus $40,000, for a total of $126,561.38.

On July 25, 2019, plaintiff filed a motion to enforce litigant's rights, seeking an order: (1) adjudging defendant to be in violation of litigant's rights "based upon her deliberate failure to abide" by the terms of the written stipulation which was incorporated within the March 2019 consent order; (2) directing defendant to immediately return the full sum of the $126,561.38 she

A-4296-19

received from the excessive distribution; (3) adjudging defendant to be "solely responsible for any 10% early withdrawal penalty" assessing the penalty against defendant's IRA and prohibiting any deduction for said penalty from plaintiff's IRA; (4) calculating any gains and losses due to defendant's improper withdrawal; (5) awarding plaintiff full reimbursement of all legal fees; and (6) "[f]or such other relief as the [c]ourt may deem equitable and just."

On August 30, 2019, defendants filed a cross-motion seeking an order: (1) denying plaintiff's motion in its entirety; (2) ordering plaintiff "to pay all costs associated with the calculation of the coverture value of the parties' retirement account[;]" (3) "[a]djudging the [p]laintiff to be in violation of litigant's rights based upon his non-compliance" with the May 10, 2018 consent order; (4) awarding reimbursement of all attorneys' fees and legal expenses; and (5) "such further relief as the [c]ourt deems fair and equitable."

The parties appeared before the Family Part court on October 18, 2019, but the court was unable to resolve the motions because it lacked sufficient information. The trial court issued an order instructing the parties to provide the following information: (1) the "gains/losses since September 5, 2008 on the $30,525.28 that was identified as the marital coverture portion of [p]laintiff's 401(k) account[;]" (2) the "dollar value of the amount of interest lost by

A-4296-19

[p]laintiff based on more money having been withdrawn from his 401(k) account, if any[;]" and (3) "[w]hether all funds must be returned to the Matrix account in order to perform a redistribution or alternatively whether a rollover from [d]efendant's IRA to [p]laintiff's Matrix account is permissible." The order provided that the hearing on plaintiff's motion and defendant's cross-motion would be reconvened on November 15, 2019. The court reserved on the issue of counsel fees.

The gains and losses on the marital coverture from September 2008 to the distribution date were to be calculated by the pension evaluator, Troyan, Inc. (Troyan). Those calculations were not completed by the November 15, 2019 hearing date. The trial court issued an order on that date providing that the parties "shall equally divide the $300 fee for calculations of gains/losses on the marital coverture" and that defendant would be responsible for the $250 archive retrieval fee to Troyan. The order further directed that parties "to notify the [c]ourt by December 15, 2019 via letter or facsimile regarding their ability to resolve the issue of legal fees, or alternatively, whether a plenary hearing is required in this matter."

Troyan provided the calculations on January 24, 2020. The calculations were based on an average of four indexes "to offer counsel a range of current

6

values for the base award" to defendant.  Defendant agreed to a calculation using these averages.  There remained, however, unresolved disputed issues, including defendant's claim that she was entitled to $11,000 from the $22,000 loan against plaintiff's 401(k).

In March 2020, defendant filed an opposing certification raising a new argument that she is "entitled to the investment experience earned on her [coverture] share while it is being held in plaintiff's account." (emphaisis added).

The COVID-19 pandemic delayed proceedings.  On July 10, 2020, the parties appeared for oral argument via Zoom video conference.  The trial court granted plaintiff's motion and denied defendant's cross-motion in its entirety.  The court ruled that defendant was adjudicated and determined to have acted in bad faith.  The trial court thereupon entered an order enforcing litigant's rights.  That order instructed that defendant was to "effectuate a direct rollover and return the sum of $42,293.75 from her IRA account into [p]laintiff's Safe Harbor IRA with Matrix[.]"  The court further ordered defendant to pay plaintiff $5,000 for counsel fees.

This appeal followed.  Defendant raises the following contentions for our consideration:

POINT I

DEFENDANT IS ENTITLED TO THE INVESTMENT EXPERIENCE AS GAINS EARNED ON HER COVERTURE SHARE WHILE IT WAS BEING HELD IN PLAINTIFF'S ACCOUNT SINCE SEPTEMBER 2008.

POINT II

PLAINTIFF IS RESPONSIBLE FOR THE VALUE OF THE LOAN AGAINST THE 401K IN THE APPROXIMATE AMOUNT OF $11,000.00 AND SAID PAYMENT MUST BE MADE DIRECTLY TO DEFENDANT TO COMPLY WITH THE TERMS OF THE PARTIES' SETTLEMENT AGREEMENT.

POINT III

THE SETTLEMENT AGREEMENT IS VOIDABLE BY DEFENDANT UNDER THE DOCTRINE OF MUTUAL MISTAKE.

POINT IV

THE COURT COMMITTED ERROR BY AWARDING PLAINTIFF ATTORNEYS FEES.

Plaintiff raises the following contention for our consideration in his cross-appeal:

POINT I

DEFENDANT'S CLAIM FOR RECOVERY OF "INVESTMENT EXPERIENCE" AS GAINS ON HER COVERTURE SHARE OF PLAINTIFF'S SAFE HARBOR IRA WAS PROPERLY REJECTED BY THE TRIAL COURT AS UNTIMELY, CONTRARY TO THE PARTIES' AGREEMENT, AND NOT

8

SUPPORTED BY A COMPETENT ACTUARIAL EXPERT OPINION.

POINT II

UNDER THE EXPRESS TERMS OF THE PARTIES' SETTLEMENT AGREEMENT DATED MAY 10, 2018, PLAINTIFF BEARS ABSOLUTELY NO OBLIGATION TO PAY THE SUM OF $11,000.00 TO DEFENDANT, AND DEFENDANT'S CLAIMS TO THE CONTRARY ARE PATENTLY ABSURD AND CONTRIVED IN BAD FAITH.

POINT III

THE PARTIES' SETTLEMENT AGREEMENT DATED MARCH 10, 2018 IS BOTH VALID AND ENFORCEABLE, SINCE THERE WAS NEVER ANY "MUTUAL MISTAKE" AS ALLEGED BY THE DEFENDANT.

POINT IV

THE TRIAL COURT PROPERLY CONCLUDED THAT DEFENDANT ACTED IN BAD FAITH, AND ALSO PROPERLY AWARDED COUNSEL FEES TO PLAINTIFF, BUT ERRED IN FIXING THE QUANTUM OF COUNSEL FEES DUE TO PLAINTIFF BASED UPON THE "PREVAILING PARTY" PROVISION IN THE PARTIES' SETTLEMENT AGREMEENT DATED MARCH 10, 2018, AND ALSO A PROPER ANALYSIS UNDER [RULE] 4:42-9(A) (1), [RULE] 5:3-5(C) AND [RULE] 4:42-9(B).

9

## II.

We begin our analysis by acknowledging the legal principles governing this appeal. Appellate courts generally "review the Family Part judge's findings in accordance with a deferential standard of review, recognizing the court's 'special jurisdiction and expertise in family matters.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 282–83 (2016) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). Appellate courts also defer to the trial court's findings of fact "when supported by adequate, substantial, credible evidence." Cesare, 154 N.J. at 411–12 (citing Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty L.P. v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995). Legal decisions of Family Part judges are reviewed under the same de novo standard that applies to legal decisions in other cases. Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019); Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013).

N.J.S.A. 2A:34-23.1 governs the equitable distribution of marital assets. The standard of review of trial court rulings relating to which assets are available for distribution and the valuation of those assets, "is whether the trial judge's

findings are supported by adequate credible evidence in the record." Borodinsky v. Borodinsky, 162 N.J. Super. 437, 443–44 (App. Div. 1978) (citing Rothman v. Rothman, 65 N.J. 219, 232 (1974)). Where the issue on appeal concerns the manner in which allocation of the eligible assets is made, "an appellate court may determine whether the amount and manner of the award constituted an abuse of the trial judge's discretion." Id. at 444; see also Slutsky v. Slutsky, 451 N.J. Super. 332, 355 (App. Div. 2017) (a Family Part judge has broad discretion in allocating assets subject to equitable distribution).

A.

We first address defendant's contention that she is entitled to "investment experience" as gains earned on her coverture share. As we have noted, and as the trial court emphasized in its ruling, defendant had agreed to Troyan's calculation methodology. The court rejected defendant's attempt to employ a new calculation raised for the first time in her supplemental certification, reasoning that "the [c]ourt can't make a better deal for the parties than the one that they made for themselves." See Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43 (1960) ("Courts cannot make contracts for parties. They can only enforce the contracts which the parties themselves have made.").

Defendant now argues that "[o]ur country has experienced unprecedented growth in the stock market over the past eleven years." She thus contends that "[t]here simply exists no reason why the [p]arties should use a flat interest rate when they know the actual return rates of the assets that comprised the pension."

We agree with the trial court that there is no reason not to hold defendant to her prior agreement to use the Troyan calculations. The trial court aptly noted that this case has been protracted, and that using a calculation methodology other than the one the parties agreed to would cause further dely. The court explained, "[i]f the defendant wanted another methodology to be used, the defendant certainly could have alerted the court to that sometime between October and when I did my order today."

We agree with the trial court that defendant's newly-minted argument essentially asked the trial court to make a new settlement agreement for the parties, which is inappropriate. See Kampf, 33 N.J. at 43. We are satisfied that there is sufficient credible evidence in the record to support the trial court's finding that the parties had previously agreed to use Troyan's calculation methodology, and on that basis, we reject defendant's "investment experience" argument.

A-4296-19

B.

We likewise reject defendant's contention that she is entitled to half of the amount of the $22,000 loan against plaintiff's 401(k). We agree with the trial court that the plain language of the 2018 settlement agreement expressly provides that plaintiff is solely responsible for the loan. The handwritten settlement agreement, which was ratified and incorporated by the March 4, 2019 consent order, provides explicitly and unambiguously that

> Plaintiff shall be responsible for 100% of the value of the loan against the 401(k) (approximately $22,000 of which $11,000 was previously agreed to be set off against defendant's share until this agreement). Upon the court's entry of the QDRO, defendant shall record a warrant of satisfaction on the judgment she has against plaintiff.

The trial court correctly determined that the plain language of this provision is controlling. Accordingly, the trial court concluded, "plaintiff . . . agreed to assume responsibility for the full $22,000 which meant that defendant was no longer entitled to $11,000."

"As a general rule, courts should enforce contracts as the parties intended." Sachau v. Sachau, 206 N.J. 1, 5 (2011). Applying this well-settled principle, we reject defendant's request essentially either to ignore the meaning of the express terms, or else change the terms of the agreement. When the parties

13

entered the 2018 settlement agreement, its terms made clear that plaintiff would assume the entire responsibility for the loan.

We likewise reject defendant's argument that the settlement agreement is voidable "because it is based on a material mistake of fact of the parties[,]" specifically relating to the language regarding the $11,000. That argument lacks sufficient merit to warrant extensive discussion. R. 2:11-3(e)(1)(E).

We acknowledge the general principle that, "[a] compromise which is the result of a mutual mistake is not binding and consent to a settlement agreement is not considered freely given when it is obtained as a result of a mistake." Lampley v. Davis Mach. Corp., 219 N.J. Super. 540, 550 (App. Div. 1987). "The doctrine of mutual mistake applies when a 'mistake was mutual in that both parties were laboring under the same misapprehension as to [a] particular, essential fact.'" Bonnco Petrol, Inc. v. Epstein, 115 N.J. 599, 608 (1989) (alteration in original) (emphasis in original) (quoting Beachcomber Coins, Inc. v. Boskett, 166 N.J. Super. 442, 446 (App. Div. 1979)).

We are satisfied, however, that plaintiff was not operating under a mistake. Even accepting defendant's supplemental certification as true, her claimed mistake is, at most, a unilateral mistake, not a mutual mistake. A unilateral mistake is "unknown to the other party" and "is not ordinarily grounds

for avoidance of a contract." Ctr. 48 Ltd. P'ship v. May Dep't Stores Co., 355 N.J. Super. 390, 412 (App. Div. 2002) (citing Intertech v. Paterson, 255 N.J. Super. 52, 59 (App. Div. 1992)).

To the extent we have not addressed them, any remaining arguments raised by defendant with respect to the motion and cross-motion to enforce litigants' rights lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

## III.

We turn finally to the argument raised by both parties that the trial court abused its discretion in awarding plaintiff $5,000 in counsel fees. Pursuant to the May 2018 handwritten settlement agreement, which was incorporated into the March 4, 2019 consent order, the parties agreed that "[i]n the event of a breach of this agreement, the non-breaching party shall be entitled to recover reasonable attorney's fees and cost against the breaching party."

At the July 10, 2020 hearing, the trial court found that defendant was "clearly act[ing] in bad faith[,]" which impacted the court's determination of counsel fee awards. The trial court further recognized that "plaintiff's counsel fees would not even ha[ve] been necessary had the defendant simply done the right thing and refunded the portion of the money that she felt was due." However, the court noted, "I don't think it would be fair to make [defendant] pay

A-4296-19

the entire amount of the plaintiff's counsel's fees[,] so I'm going to do what I think is fair and reasonable . . . ."  The court thereupon determined "it would be appropriate for the defendant to pay $5,000 of the plaintiff's counsel fees.  And if she doesn't have the ability to afford that, you can adjust the amount of money that's going to be refunded to the plaintiff to include that counsel fee amount."

Plaintiff asserts that by the time the court decided the motion and cross-motion on July 10, 2020, he had incurred at least $15,761.45 in legal fees.  Plaintiff adds that "[a]s a result of this appeal, [p]laintiff's legal costs are still ongoing and may well double."  Plaintiff thus contends the trial court's $5,000 award was "arbitrary in nature, because it did not fairly take into consideration the extent of [d]efendant's bad faith, the parties' respective financial circumstances, or the applicable Rules of Court and Rules of Professional Conduct."

Defendant also contends the trial court failed to consider the appropriate factors in determining the award of attorney fees.  Defendant argues "the judge simply found bad faith and ordered an award without either party's case information statement or other relevant information."  Defendant adds that, "[h]ad the trial court properly considered the relevant factors, it should have become abundantly obvious that [d]efendant did not act in bad faith, is poor, has

paid attorneys to enforce [p]laintiff's breaches for years and had supported the [p]arties' children through college without support from the [p]laintiff."

The law is well-settled that "the award of counsel fees and costs in a matrimonial action rests in the discretion of the court." Williams v. Williams, 59 N.J. 229, 233 (1971). "[A] reviewing court will disturb a trial court's award of counsel fees 'only on the rarest occasions, and then only because of a clear abuse of discretion.'" Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 386 (2009) (quoting Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001)). The same principle applies to an award of counsel fees in matrimonial matters. See Williams, 59 N.J. at 233.

Rule 5:3-5(c) enumerates nine factors for the court to consider in determining the amount of the fee award, accounting for information required to be submitted pursuant to Rule 4:42-9. The nine factors are: (1) "the financial circumstances of the parties;" (2) "the ability of the parties to pay their own fees or to contribute to the fees of the other party;" (3) "the reasonableness and good faith of the positions advanced by the parties both during and prior to trial;" (4) "the extent of the fees incurred by both parties;" (5) "any fees previously awarded;" (6) "the amount of fees previously paid to counsel by each party;" (7) "the results obtained;" (8) "the degree to which fees were incurred to enforce

existing orders or to compel discovery;" and (9) "any other factor bearing on the fairness of an award." R. 5:3-5(c).

Importantly, the record shows that in this instance, the trial court did not require the parties to submit up-to-date case information statements with which to assess each party's relative financial circumstances. Accordingly, although we are reticent to delay this matter further, we are constrained to conclude that the judge made insufficient findings and failed to adequately explain its consideration and analysis of the relevant factors. We therefore remand for the trial court to make specific findings as to the pertinent Rule 5:3-5(c) factors. We offer no opinion as to the proper amount of the attorney fee award.

Affirmed, in part, and vacated and remanded, in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION