**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0130-23

ANUJ S. ACHARYA,

      Plaintiff-Appellant/
Cross-Respondent,

v.

JOLLY THAKKAR,

      Defendant-Respondent/
Cross-Appellant.

_____

Submitted October 22, 2025 – Decided November 17, 2025

Before Judges Mayer and Jacobs.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FM-12-0954-20.

Jardim, Meisner, Salmon, Sprague, & Susser, PC, attorneys for appellant/cross-respondent (Jessica Ragno Sprague, on the briefs).

Einhorn, Barbarito, Frost, Botwinick, Nunn & Musmanno, PC, attorneys for respondent/cross-appellant (Bonnie C. Frost, Matheu D. Nunn, and Jessie M. Mills, on the briefs).

PER CURIAM

Plaintiff Anuj Acharya and defendant Jolly Thakkar appeal from various provisions in a June 2, 2023 Dual Final Judgment of Divorce (DFJOD), a June 22, 2023 Amended Dual Final Judgment of Divorce (ADFJOD), and an August 25, 2023 order addressing their motions for reconsideration. Plaintiff's appeal focuses on the Family Part judge's determinations regarding child custody, parenting time, payment of child support, and equitable distribution. Defendant's cross-appeal focuses on the same issues, plus alimony and counsel fees. We affirm all aspects of the challenged judgments and orders, except we remand for the calculation of child support.

The trial before the Family Part judge spanned nearly fifty non-consecutive days. In addition, there were twenty-eight pre-trial orders primarily addressing parenting time issues.

In her June 2, 2023 written findings of fact and conclusions of law, the judge detailed the plethora of pre-trial motions filed by the parties and the dispositions of those motions. The parties are intimately familiar with the judge's decisions emanating from their extensive motion practice. We need not repeat the outcome of the various motions presented to the judge for adjudication.

A-0130-23

The parties are equally familiar with their extensive trial testimony. The judge noted the "parties engaged at times in rambling and digressive testimony throughout the proceedings[] attempting to further their own self-interested narratives." The judge found certain testimony to be "evasive" and "unconvincing" at various points throughout the trial. As the judge explained, both parties lacked credibility on a variety of issues and were less than forthcoming in their testimony.

Additionally, the judge summarized the testimony of the court-appointed guardian ad litem (GAL) and the parties' child custody experts. The judge relied extensively on the testimony of the GAL and experts in rendering her custody determination.

To give context to our disposition of the issues on appeal, we summarize the relevant facts from the trial record. The parties were married in a civil ceremony in 2017, followed by a religious ceremony in May 2018. One year later, defendant gave birth to D.A.[1]

Immediately after D.A.'s birth, the parties separated. Plaintiff lived in California and defendant lived in New Jersey. The marriage lasted twenty-two months.

---

[1] We use initials to protect the child's privacy. R. 1:38-3(d)(1) and (13).

A-0130-23

Both parties held degrees in software engineering. During the marriage, plaintiff worked at Turo and earned an initial salary of $200,000, with an option to purchase 80,000 shares of Turo's common stock.[2] At the conclusion of trial, plaintiff's gross annual salary was $281,000.

Defendant worked prior to marriage, earning about $90,000 per year. Defendant did not work after the parties married. Just after the marriage, defendant took online classes toward a master's degree. When she became pregnant, defendant ceased pursuit of the degree. Defendant returned to work on a full-time basis in 2021, earning about $156,000 annually. Additionally, defendant received significant annual bonuses from her employer in 2021 and 2022, totaling $116,000.

The parties purchased a home in California in the summer of 2018, intending to reside there permanently. Plaintiff contributed almost $125,000 toward the down payment on the home and defendant contributed about $79,000. The mortgage on the marital home, in plaintiff's name, was $700,000 at the time of trial. Plaintiff paid all expenses related to the marital home until it was sold.

---

[2] Although plaintiff claimed Turo cancelled his stock option, the record reflects a reissuance of 80,000 shares of common stock dated August 2020 with an initial approval date of September 2018.

4

Each party retained a real estate appraisal expert to value the marital home. Plaintiff's appraisal expert valued the home at $1,115,000 after reducing the value by $32,000 for suggested repairs. Defendant's appraisal expert valued the home at $1,250,000 in October 2021 and the expert provided an updated appraisal value of $1,375,000 in March 2022.

The parties resided at their California home from August 2018 until March 2019. In March 2019, defendant returned to New Jersey and lived with her parents pending the birth of the parties' child.

There were periods of marital discord while the parties lived in California. The disputes escalated after defendant returned to New Jersey. Defendant never returned to California after March 2019.

The catalyst for the demise of the parties' marriage was a physical altercation in New Jersey between plaintiff and defendant's family members shortly before D.A.'s birth. The police were called to defendant's parents' home. As a result of this incident, plaintiff left for California despite the imminent birth of the child.

Plaintiff returned to New Jersey after D.A.'s birth and visited the child in the hospital. After a two-day visit with the child, plaintiff returned to California and did not return to New Jersey for about six months.

A-0130-23

Defendant named the child without plaintiff's input. However, both parties selected the child's middle name. Defendant also chose a pediatrician for the child without consulting plaintiff.

The parties were unable to agree on issues concerning the child. Their difficulties were compounded by the COVID-19 pandemic. At trial, plaintiff and defendant recounted nearly every incident, outburst, and dispute between them.[3] The judge found their testimony regarding these issues "unnecessarily prolonged the trial and obfuscated [the] focus on salient aspects of the proofs."

Plaintiff's custody expert, Dr. Mark Singer, testified it would be in D.A.'s best interest for the parents to live in close proximity rather than 3,000 miles apart. He opined such a situation would provide frequent, predictable, and consistent contact with the child. He declined to proffer a recommendation if the parties continued to reside on opposite coasts. He also testified defendant created obstacles to plaintiff's access to D.A., including medical and educational decisions, and defendant had limited insight into her contribution to the family's disfunction.

---

[3] Among the side disputes that consumed a large portion of the trial testimony were allegations of bed bugs causing D.A. to suffer a skin condition, treatment for D.A.'s skin condition, third parties' presence during parenting time exchanges, alleged violations of the parenting time provisions in court orders, and the recording of parenting time exchanges.

A-0130-23

The judge found Dr. Singer "downplay[ed] [p]laintiff's shortcomings and emphasized [d]efendant's inadequacies." She also found Dr. Singer's conclusion that the parties' co-parenting issues would "ameliorate overtime without the need for anything more than global therapy for both parties" to be "unsupport[ed]" based on "the extensive litigation history between the parties."

Defendant's custody expert, Dr. Gerald Figurelli, testified at trial. He reported defendant suffered anxiety, depression, and post-traumatic stress disorder due to her negative interactions with plaintiff. Dr. Figurelli explained plaintiff displayed "narcissistic personality traits," affecting his ability to recognize the negative impact of putting his own interests above that of the child, which impacted plaintiff's ability to effectively co-parent with defendant. According to Dr. Figurelli, both parents demonstrated emotional fitness deficits.

Dr. Figurelli opined defendant should be designated the parent of primary residence because she was D.A.'s central parental attachment figure and D.A. had strong emotional attachments to defendant and her immediate family. According to Dr. Figurelli, defendant's family provided support and gave stability to D.A. and defendant. Further, Dr. Figurelli explained defendant had a better understanding of D.A.'s developmental issues and should be granted final decision-making authority regarding D.A.'s medical and educational needs.

7

A-0130-23

Additionally, Dr. Figurelli recommended both parents participate in therapy to successfully co-parent in the future.

Dr. Figurelli also recommended a detailed parenting time plan. His recommendations differed depending on whether plaintiff remained in California or relocated to New Jersey. Under either scenario, Dr. Figurelli suggested the parenting plan be implemented gradually and allow plaintiff significant video parenting time.

The court-appointed GAL, a family law attorney with over thirty-five years of experience, interviewed the parties and reviewed documents provided by the parties' counsel. The GAL also considered reports authored by the parties' custody experts. The judge tasked the GAL with conducting a custody and parenting time investigation and rendering a written report.

The GAL opined the child's best interests would be served by having significant time with both parents notwithstanding the GAL's conclusion that each parent demonstrated parenting shortfalls and negative behaviors. Given the parties' bi-coastal residences, the GAL recommended a detailed parenting time schedule.

The judge explained the GAL provided a "common-sense practical approach guided by the child's best interest." However, the judge concluded the

8

GAL's bi-coastal parenting time recommendation "[wa]s unsupported given consideration of Dr. Figurelli's reasoned and supported opinion to the contrary."

The judge painstakingly considered the testimony and documentary evidence regarding the parties' marital assets and debts. According to plaintiff's March 2020 Case Information Statement (CIS), his gross annual salary for 2019 was $218,035. Plaintiff's CIS reflected monthly expenses of approximately $8,800, which included his payment of all expenses for the marital home. The CIS indicated plaintiff had several premarital bank accounts and trading accounts worth approximately $412,000. Plaintiff stated he had an educational loan in the amount of $28,000 and a mortgage on the marital home in the amount of $767,000.

In a November 2021 CIS, plaintiff reported his gross annual salary for 2020 was $228,257. His monthly expenses in the updated CIS increased to $12,825 due to his traveling to New Jersey to visit D.A. The premarital assets in plaintiff's various bank and trading accounts as of November 2021, excluding his estimated $1,150,000 valuation for the marital home, totaled approximately $782,000. Plaintiff's updated CIS reflected the same student loan debt, a $733,659 mortgage on the marital home, and $20,000 loan from his parents for payment of legal expenses.

According to defendant's January 2020 CIS, she reported a joint income of $318,477 in 2018. She also reported monthly expenses in the amount of $9,710. However, at trial, defendant testified to monthly expenses in the amount of $2,150. Defendant's assets in her CIS reported $987,888 as the value of the marital home, de minimis bank accounts, and a retirement account worth $19,520. Additionally, defendant claimed $23,000 in personal loans from her family.

In an updated CIS from November 2021, defendant claimed personal expenses in the amount of $11,930 monthly. She provided updated information concerning the parties' bank accounts and other assets totaling $1,875,868. Regarding debt, defendant reported a $766,805 mortgage on the marital home and $353,000 in personal loans from family.

Prior to trial, defendant sought to exclude the GAL's custody recommendation. She argued the GAL rendered custody conclusions in the absence of an investigative report. Additionally, defendant sought to preclude Dr. Singer's recommendation that she move to California. Defendant also asked the court to adopt another Family Part judge's findings from a prior domestic violence proceeding involving the parties.

A-0130-23

The judge denied defendant's applications regarding the recommendations of the GAL and Dr. Singer. The judge stated she would consider the weight to be given to their recommendations. The judge also agreed to adopt the credibility findings of the Family Part judge who handled the domestic violence matter.

Plaintiff testified at trial. He reviewed his employment history, including his current employer's sponsorship of his employment in California. At the time of trial, plaintiff was in the process of finding an employer willing to sponsor his employment in New Jersey. According to plaintiff, he applied for at least 104 jobs.

Plaintiff told the judge, in detail, every incident he experienced with defendant and her family regarding custody and parenting time. The judge recounted those incidents in her fact findings and we need not repeat them here. Plaintiff also testified he began seeing a therapist.

Regarding equitable distribution, plaintiff testified the marital home in California had a $784,000 mortgage. According to plaintiff, he paid $118,000 and defendant paid $79,100 toward the down payment on the home. Further, plaintiff testified he paid the monthly mortgage and all expenses associated with the marital home.

A-0130-23

Regarding the Turo stock options, plaintiff explained the options were cancelled in 2019 and not renewed. According to plaintiff, he held no Turo stock options at the time of trial.

Regarding the various bank accounts, plaintiff testified most of the accounts were premarital and he reported the value of those accounts as of the marriage date. Plaintiff acknowledged making various transfers between his bank accounts in 2018 and 2019. He testified similarly regarding his brokerage accounts.

Defendant testified at trial regarding the parties' marital discord and plaintiff's anger issues. She told the judge about alleged incidents of domestic violence committed by plaintiff. As a result of these incidents, defendant claimed she developed severe anxiety.

Defendant also described numerous incidents during parenting time exchanges with plaintiff. Defendant explained she did not allow plaintiff to have overnight parenting time with D.A. because plaintiff declined to follow the child's customary sleeping and eating schedule.

Regarding the child's medical needs, defendant testified D.A. required speech and developmental intervention therapy, but plaintiff objected to D.A.'s participation in those therapies. Despite plaintiff's objection, defendant

12

scheduled D.A. for those therapies. Additionally, the parties were unable to agree on a pediatrician for their son. Further, defendant testified it would be easier for her to provide health insurance coverage for D.A. because her plan had no co-payment requirement.

In addressing equitable distribution, defendant sought an equal share of the net proceeds from the sale of the marital home. However, she admitted to making no financial contribution to the marital home other than a $79,100 down payment.

Regarding the parties' bank accounts, defendant testified plaintiff deposited his income into a Chase account and then transferred the money to other bank accounts. Defendant sought an equal share of marital funds held in the bank and brokerage accounts.

Contrary to plaintiff's testimony, defendant asserted the Turo stock options were not cancelled. She sought an equal division of the value of those stock options.

Defendant also requested alimony. During the trial, defendant admitted the monthly expenses stated in her January CIS and November CIS were paid by her parents. Defendant further conceded there was no promissory note obligating her to repay her parents for expenses.

A-0130-23

After considering the nearly fifty days of trial testimony and the extensive documentary evidence presented at trial, the judge entered a DFJOD accompanied by a sixty-four-page written decision. The judge awarded joint legal custody of D.A. and designated defendant as the parent of primary residence. The judge also granted defendant final decision-making authority for D.A.'s educational and medical decisions. Further, the judge ordered plaintiff and defendant to complete therapy and attend co-parent counseling.

Based on Dr. Figurelli's recommendation, the judge awarded plaintiff in-person parenting time and issued a detailed schedule for parenting time depending on whether parenting time took place in California or New Jersey. The judge's parenting determination increased plaintiff's parenting gradually and included future overnights with D.A.

Additionally, the judge granted plaintiff thirty minutes of video parenting daily. The judge directed video parenting occur on a large screen, monitored by Supervision Monitors, LLC for three months. The judge directed plaintiff to pay the costs associated with monitoring his video parenting time.

Further, the judge required proof of plaintiff's mental health treatment as a prerequisite to him exercising parenting time. The judge also ordered all parenting time exchanges for visits in New Jersey to occur at the local police

14

station or at D.A.'s school if school was in session. The judge appointed a parenting coordinator to address ongoing parenting issues.

Regarding the marital residence, the judge ordered the sale of the home. The judge found plaintiff paid all home expenses since the date of purchase. Thus, the judge directed the net proceeds from the sale of the home be divided with plaintiff receiving sixty percent and defendant receiving forty percent. The judge awarded plaintiff a larger percentage from the sale of the marital home to reflect plaintiff's significant financial contributions toward the marital home.

Regarding equitable distribution, the judge ordered an equal division of the bank accounts in India, one of plaintiff's Bank of America accounts, plaintiff's Chase account, and plaintiff's Amalgamated Bank account. Regarding the parties' stock holdings, the judge ordered in-kind division of certain shares from plaintiff's and defendant's brokerage accounts. Further, the judge awarded defendant a credit for certain stock sales which occurred during the marriage.

On plaintiff's Turo stock options, the judge found those options were never cancelled. Rather, the judge determined the stock options were transferred to a different account for plaintiff's benefit. Thus, the judge ordered plaintiff's stock options be equally distributed upon vesting.

A-0130-23

Regarding child support, the judge directed the amount be retroactively modified from $337 to $383 per week from May 21, 2019, through July 6, 2021. Thereafter, child support would be $320 per week.

Further, the judge ordered plaintiff to maintain medical and dental insurance for D.A. The order required the parties to share, on a pro rata basis, any unreimbursed medical expenses for D.A. in excess of $250, work-related childcare, and private preschool expenses.

The judge further ordered plaintiff to pay an unspecified amount for his pro rata share of D.A.'s attendance at preschool and unreimbursed medical expenses during the pendente lite period, pending defendant's submission of receipts for those expenses. The judge also ordered plaintiff maintain $1,000,000 in life insurance for the payment of child support and child-related expenses. The judge allowed defendant to claim head of household status for tax purposes the first year following the divorce and directed the parties to annually alternate use of the child tax credit.

Based on the short duration of the marriage and defendant's salary at the time of trial, the judge declined to award alimony to defendant. Additionally, the judge ordered each party to pay their own counsel and expert fees.

A-0130-23

About two weeks after entering the DFJOD, the judge issued an ADFJOD, addressing some corrections and clarifications. In the ADFJOD, the judge ordered plaintiff's Turo stock options be divided in-kind as the options are exercised rather than upon vesting. Additionally, the ADFJOD ordered child support be paid at $337 per week from July 6, 2021 to June 2, 2023, and then $320 per week thereafter. The ADFJOD also gave defendant fourteen days to provide receipts documenting D.A.'s preschool and unreimbursed medical expenses. Lastly, the ADFJOD gave plaintiff, rather than defendant, head of household status for tax purposes.

In August 2023, plaintiff's employer authorized him to work remotely in New Jersey. Plaintiff moved to New Jersey and rented an apartment approximately ten miles from defendant's home. Plaintiff's therapist provided a letter indicating plaintiff's compliance with court-ordered therapy.

Following plaintiff's move to New Jersey, both parties moved for reconsideration of the ADFJOD. In her reconsideration motion, defendant submitted a certification from Dr. Figurelli. The doctor maintained, despite plaintiff's relocation to New Jersey, that his original custody and parenting time recommendations should not be immediately altered. Instead, Dr. Figurelli

suggested he could prepare an updated assessment in response to the changed circumstances.

In an August 25, 2023 order, the judge partially reconsidered the ADFJOD. She found plaintiff's relocation to New Jersey constituted a change in circumstances and warranted modification of the existing parenting time plan. The judge modified plaintiff's parenting time, allowing him parenting time with D.A. every other weekend from 11:30 in the morning on Fridays until 8:00 in the morning on Sundays. The judge also permitted plaintiff to have midweek parenting time on Tuesdays and Thursdays after school until 6:30 p.m. The judge ordered plaintiff to pick up D.A. at school or at the local police station if school was not in session. Plaintiff would return D.A. to defendant at the local police station. However, the judge explained shared custody was not in D.A.'s best interests because the parties remained unable to effectively communicate and cooperate.

Additionally, the judge ordered plaintiff to have the same vacation time with D.A. as defendant. Each parent could exercise no more than two consecutive weeks for vacation upon thirty days' notice to the other parent. Each parent had to provide travel information to the other parent when travelling with D.A. Further, the judge directed Supervision Monitors, LLC to facilitate

A-0130-23

communications between D.A. and the non-vacationing parent during vacation time.

On reconsideration, the judge declined to compel plaintiff's payment of all preschool expenses for D.A. Instead, the judge ordered plaintiff to pay defendant $1,838.99 as his pro rata share of those expenses.

Additionally, the judge denied defendant's request to reconsider payment of her counsel and expert fees. The judge reiterated that plaintiff remained obligated to pay the sums ordered in the ADFJOD. The judge also denied defendant's application for sanctions against plaintiff. Further, the judge granted defendant's application to clarify her receipt of half the cash in plaintiff's brokerage account and half of plaintiff's Turo stock when the company goes public.

On reconsideration regarding child support, the judge modified the child support amount based on plaintiff moving to New Jersey. However, the judge found defendant failed to support her request for plaintiff's payment of supplemental child support. According to the record, the judge issued an amended child support order indicating a net child support award of $318 per week. Additionally, the judge denied defendant's request on reconsideration that

she be permitted to provide health insurance for D.A. The judge also denied defendant's request for counsel fees associated with the reconsideration motion.

On appeal, plaintiff argues the judge erred in barring his testimony regarding acts of domestic violence allegedly committed by defendant and her family. He further asserts the judge erred in relying entirely on the custody recommendations of defendant's expert in rendering a custody decision. Additionally, plaintiff contends the judge erred in awarding equitable distribution. He also argues the judge improperly allowed defendant to submit evidence after trial. Lastly, he claims the judge required him to maintain an excessive amount of life insurance.

On cross-appeal, defendant argues the judge erred in her decisions regarding parenting time and child support. She further contends the judge erred by not allowing her to maintain health insurance for D.A., claim head of household status, or claim a child tax credit. Additionally, defendant argues the judge erred in precluding her from recording interactions with plaintiff. She also challenges the judge's denial of alimony, arguing she did not receive pendente lite support and did not work during the marriage. Lastly, defendant asserts the judge erred in declining to award her attorney's fees and costs.

A-0130-23

I.

"[F]indings by a trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). Deference is also accorded to a trial judge's credibility determinations because the judge "hears the case, sees and observes the witnesses, [and] hears them testify," affording them "a better perspective than a reviewing court in evaluating the veracity of a witness." Id. at 412 (quoting Pascale v. Pascale, 113 N.J. 20, 33 (1988)).

We are bound to accept a trial judge's conclusions when they are supported by the evidence. Ibid. If we conclude there is satisfactory evidentiary support for the judge's findings, our "task is complete and [we] should not disturb the result." Beck v. Beck, 86 N.J. 480, 496 (1981) (quoting State v. Johnson, 42 N.J. 146, 161-62 (1964)). We will "disturb the factual findings and legal conclusions of the trial judge [if] we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Rova Farms Resort v. Inv'rs Ins. Co. of Am., 65 N.J 774, 787 (1994) (quoting Fagliane v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)).

A-0130-23

II.

We first address plaintiff's argument that the judge erred in barring his testimony regarding domestic violence incidents prior to D.A.'s birth. He contends the judge erred in allowing defendant to present testimony on the subject while precluding his testimony. We disagree.

In an in limine ruling, the judge stated she would adopt the findings made by another Family Part judge during a domestic violence trial involving the parties related to an incident in May 2019. When plaintiff attempted to testify about this incident at trial, the judge barred plaintiff's testimony regarding the "specifics of those domestic violence allegations." The judge explained she would not allow relitigation of issues resolved by the Family Part judge in the domestic violence matter.

However, on rebuttal, the judge allowed plaintiff to describe the May 2019 incident over defense counsel's objection. The judge permitted the testimony because defendant and her trial witnesses testified about that incident.

We defer to a trial court's evidentiary ruling absent an abuse of discretion. See Invs. Bank v. Torres, 243 N.J. 25, 48 (2020) (citing Hisenaj v. Kuehner, 194 N.J. 6, 12 (2008)). We review a trial court's evidentiary ruling "under the abuse of discretion standard because, from its genesis, the decision to admit or exclude

evidence is one firmly entrusted to the trial court's discretion." State v. Prall, 231 N.J. 567, 580 (2018) (quoting Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010)).

"When a trial court admits or excludes evidence, its determination is 'entitled to deference absent a showing of an abuse of discretion, i.e., [that] there has been a clear error of judgment.'" Rowe v. Bell & Gossett Co., 239 N.J. 531, 551 (2019) (alteration in original) (quoting Griffin v. City of E. Orange, 225 N.J. 400, 413 (2016)). Accordingly, we "will reverse an evidentiary ruling only if it 'was so wide [of] the mark that a manifest denial of justice resulted.'" Id. at 551-52 (alteration in original) (quoting Griffin, 225 N.J. at 413).

Here, the judge permitted plaintiff to offer testimony on rebuttal regarding the domestic violence incident in May 2019. And plaintiff did so in great detail.

On this record, we discern no abuse of discretion in the judge's in limine ruling regarding plaintiff's testimony about the incidents of domestic violence because plaintiff was permitted to testify at length about those events. Additionally, the trial judge had the benefit of the transcript from the Family Part judge's ruling in the domestic violence case. Therefore, plaintiff's testimony was likely cumulative.

III.

We next consider plaintiff's argument that the judge erred in adopting Dr. Figurelli's parenting time recommendation in its entirety. He further asserts the judge failed to explain why the expert's proposed parenting time plan was in D.A.'s best interests. We reject plaintiff's arguments.

In a bench trial, the judge, as the finder of fact, is free to "give [the expert's testimony] whatever weight [they] deem appropriate." Model Jury Charge (Civil), 1.13,"Expert Testimony" (approved Apr. 1995). "[A] trial judge may accept or reject an expert's opinion in its entirety, or may accept only some of the expert's opinion." Reese v. Weis, 430 N.J. Super. 552, 581 (App. Div. 2013) (citing Brown v. Brown, 348 N.J. Super. 466, 478 (App. Div. 2002)).

Because this was a bench trial, the judge explained she would give appropriate weight to the experts' testimony regarding parenting time. The judge's decision regarding parenting time was amply supported by the evidence. Moreover, the judge did not rely exclusively on Dr. Figuerlli's testimony. Rather, the judge considered all the trial testimony, including testimony provided by the GAL and plaintiff's custody expert. When plaintiff relocated to New Jersey, the judge considered the GAL's and plaintiff's expert's opinions stating parenting time should reflect a fifty-fifty parenting time arrangement.

The judge also considered Dr. Figurelli's opinion recommending no immediate change in parenting time after plaintiff moved to New Jersey.

We are satisfied the judge properly exercised her discretion in determining parenting time after considering the recommendations of the two custody experts, the recommendation of the GAL, and the other trial evidence reflecting the parties' significant difficulties co-parenting their child.

IV.

We also reject plaintiff's argument the judge erred in awarding custody and final decision-making authority to defendant.

A Family Part judge determines custody by applying the best interests standard under N.J.S.A. 9:2-4. The statute provides:

> In making an award of custody, the court shall consider but not be limited to the following factors: the parents' ability to agree, communicate and cooperate in matters relating to the child; the parents' willingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse; the interaction and relationship of the child with its parents and siblings; the history of domestic violence, if any; the safety of the child and the safety of either parent from physical abuse by the other parent; the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision; the needs of the child; the stability of the home environment offered; the quality and continuity of the child's education; the fitness of the parents; the geographical proximity of the parents' homes; the

25

A-0130-23

extent and quality of the time spent with the child prior to or subsequent to the separation; the parents' employment responsibilities; and the age and number of the children.

[N.J.S.A. 9:2-4(c).]

When faced with the responsibility of resolving a dispute between parents concerning their child, the polestar of the court's decision is always the best interests of the child. D.A. v. R.C., 438 N.J. Super. 431, 450 (App. Div. 2014). "This overarching consideration" represents the "paramount judicial responsibility to consider and safeguard 'the safety, happiness, physical, mental and moral welfare of the child.'" Ibid. (quoting Fantony v. Fantony, 21 N.J. 525, 536 (1956)). Although N.J.S.A. 9:2-4 requires Family Part judges presume equal parenting time for both parents, any of the enumerated factors may affect that calculation. W.M. v. D.G., 467 N.J. Super. 216, 229-30 (App. Div. 2021).

Here, the judge's written decision addressed each of the custody factors under N.J.S.A. 9:2-4(c). The judge explained the parties had significant disagreement regarding decisions affecting D.A., including medical and educational decisions. The judge also considered the testimony related to the incidents of domestic violence between the parties. Further, the judge noted the escalating tension between plaintiff and defendant during parenting time exchanges and the insertion of third parties into those exchanges. While the

26

judge explained both parents were physically capable of taking care of D.A., she agreed with Dr. Figurelli's assessment that both parties should seek mental health treatment for D.A.'s benefit.

The judge's initial custody determination was driven by the parents' lack of geographic proximity to each other. The judge noted plaintiff required his employer's sponsorship to work in New Jersey. Further, the judge explained defendant's family provided structure, stability, and support to D.A. and defendant in establishing a home in New Jersey.

Based on the statutory factors, the judge awarded the parties joint legal custody of D.A. The judge designated defendant as the parent of primary residence and plaintiff as the parent of alternate residence. Additionally, the judge awarded defendant final decision-making authority for D.A.'s medical and educational decisions. The judge adopted a detailed parenting time schedule reflecting the parents' bi-coastal residences at the time of the ADFJOD.

After hearing the reconsideration motions and learning of plaintiff's move to New Jersey, the judge, adopting her prior findings on the statutory custody factors, found a change of circumstances warranting an award of additional parenting time for plaintiff. However, the judge declined to revisit her original

27

custody decision and award of final decision-making authority based on the parents' continued inability to cooperate and communicate regarding their child.

Having reviewed the record, we are satisfied the judge properly applied the statutory factors regarding custody. We discern no basis to reverse the judge's decisions regarding custody or the award of final decision-making authority on these facts.

V.

We next consider plaintiff's arguments that the judge erred in determining equitable distribution. We disagree.

Our review of equitable distribution determinations is narrow. Valentino v. Valentino, 309 N.J. Super. 334, 339 (App. Div. 1998) (citing Wadlow v. Wadlow, 200 N.J. Super. 372, 377 (App. Div. 1985)). We review a judge's equitable distribution award for abuse of discretion. Borodinsky v. Borodinsky, 162 N.J. Super. 437, 444 (App. Div. 1978). We will uphold an equitable distribution determination if "supported by adequate credible evidence in the record." Ibid. (citing Rothman v. Rothman, 65 N.J. 219, 233 (1974)).

Family Part judges have broad discretion to allocate assets subject to equitable distribution. Clark v. Clark, 429 N.J. Super. 61, 71 (App. Div. 2012) (citing Steneken v. Steneken, 367 N.J. Super. 427, 435 (App. Div. 2004)). We

decide only whether the trial court "mistakenly exercised its broad authority to divide the parties' property and whether the result was 'reached by the trial judge on the evidence, or whether it is clearly unfair or unjustly distorted by a misconception of law or findings of fact that are contrary to the evidence.'" Valentino, 309 N.J. Super. at 339 (citing Wadlow, 200 N.J. Super. at 382). "A sharp departure from reasonableness must be demonstrated before our intercession can be expected." Wadlow, 200 N.J. Super. at 382 (quoting Perkins v. Perkins, 159 N.J. Super. 243, 248 (App. Div. 1978)).

"The goal of equitable distribution . . . is to effect a fair and just division of marital assets." Steneken v. Steneken, 183 N.J. 290, 299 (2005) (quoting Steneken, 367 N.J. Super. at 434). The trial judge must identify the assets subject to equitable distribution, value the assets as of the date of complaint, and determine how the assets should be distributed between the parties. Rothman, 65 N.J. at 232.

Pursuant to N.J.S.A. 2A:34-23.1, the Legislature enumerated factors a trial judge should consider in determining an equitable distribution award. N.J.S.A. 2A:34-23.1 includes the following factors:

a. The duration of the marriage or civil union;

b. The age and physical and emotional health of the parties;

c. The income or property brought to the marriage or civil union by each party;

d. The standard of living established during the marriage or civil union;

e. Any written agreement made by the parties before or during the marriage or civil union concerning an arrangement of property distribution;

f. The economic circumstances of each party at the time the division of property becomes effective;

g. The income and earning capacity of each party, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children, and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage or civil union;

h. The contribution by each party to the education, training or earning power of the other;

i. The contribution of each party to the acquisition, dissipation, preservation, depreciation or appreciation in the amount or value of the marital property, or the property acquired during the civil union as well as the contribution of a party as a homemaker;

j. The tax consequences of the proposed distribution to each party;

k. The present value of the property;

A-0130-23

l. The need of a parent who has physical custody of a child to own or occupy the marital residence or residence shared by the partners in a civil union couple and to use or own the household effects;

m. The debts and liabilities of the parties;

n. The need for creation, now or in the future, of a trust fund to secure reasonably foreseeable medical or educational costs for a spouse, partner in a civil union couple or children;

o. The extent to which a party deferred achieving their career goals; and

p. Any other factors which the court may deem relevant.

N.J.S.A. 2A:34-23.1 "reflects a public policy that is 'at least in part an acknowledgment that marriage is a shared enterprise, a joint undertaking, that in many ways . . . is akin to a partnership.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 284 (2016) (omission in original) (quoting Smith v. Smith, 72 N.J. 350, 361 (1977)). The statute "advance[s] the policy of promoting equity and fair dealing between divorcing spouses." Barr v. Barr, 418 N.J. Super. 18, 45 (App. Div. 2011). The statute "requires evaluation of unique facts attributed to each asset." Slutsky v. Slutsky, 451 N.J. Super. 332, 358 (App. Div. 2017).

Having reviewed the record, we are satisfied the judge equitably divided the parties' marital assets in a manner consistent with the equitable distribution

31

statute and explained, in detail, her application of the facts adduced at trial to the relevant statutory factors. We need not repeat the judge's reasoning here. It is well established that equitable distribution does not mean equal distribution. See Rothman, 65 N.J. at 232 n.6. We discern no abuse of discretion in the judge's award of equitable distribution.

VI.

We also reject plaintiff's argument that the judge erred in allowing defendant to submit post-trial evidence in support of her payment of D.A.'s preschool and unreimbursed medical expenses.

At trial, defendant testified that she paid the tuition for D.A. to attend preschool and other associated preschool expenses. She also testified regarding payment of D.A.'s out-of-pocket medical expenses. While defendant presented her bank statements during the trial, the AFDJOD allowed defendant fourteen days to produce the actual receipts documenting her payment of these expenses. After producing the receipts, the judge determined plaintiff would be responsible to pay his pro rata share of the documented expenses. According to the documents produced by defendant in accordance with the AFDJOD, the judge ordered plaintiff to pay $1,838.99, representing plaintiff's pro rata share of those expenses.

A-0130-23

We discern no abuse in the judge's allowance of defendant's production of the actual receipts for D.A.'s preschool costs and unreimbursed medical expenses. The best evidence for ordering plaintiff's payment of his pro rata share was the actual receipts rather than defendant's bank statements. By allowing the admission of actual receipts post-trial, the judge ensured plaintiff paid only his pro rata share of those expenses.

VII.

Additionally, we reject plaintiff's contention that the judge erred in determining the amount of life insurance to be obtained for D.A.'s benefit. Plaintiff argues the imposition of a $1,000,000 life insurance policy was excessive given his child support obligation amounted to $16,536 annually.

N.J.S.A. 2A:34-23 permits a court to require "reasonable security for the due observance of [support] orders." This requirement is a discretionary decision. See Jacobitti v. Jacobitti, 135 N.J 571, 575 (1994) (finding that courts have substantial discretion in fixing security obligations) (citing Carr v. Carr, 120 N.J. 336, 351 (1990)).

We are satisfied that the judge acted within her substantial discretion in ordering plaintiff to maintain $1,000,000 in life insurance to secure his future support obligations. The amount of life insurance will secure not only the child

A-0130-23

support obligation, but additional costs such as unreimbursed medical and educational expenses for D.A. as he ages. Further, the required life insurance amount reflects future inflation and other economic uncertainties.

VIII.

We turn to the arguments in defendant's cross appeal. First, defendant asserts the judge erred regarding certain parenting time decisions. Specifically, she contends the judge should have ordered plaintiff's parenting time be supervised and declined to allow plaintiff vacation parenting time. We disagree.

Both custody experts and the GAL endorsed unsupervised parenting time and overnight vacation parenting time. While there is a history of domestic violence between plaintiff and defendant, defendant testified at trial that plaintiff never harmed D.A. None of the experts expressed any concern regarding unsupervised parenting time or vacation parenting time for plaintiff.

Based on the undisputed expert testimony, the judge did not err in allowing plaintiff to have unsupervised parenting time and overnight vacation parenting time with the child. To ameliorate any concerns regarding overnight vacation parenting time, the judge allowed defendant to have video calls with D.A. while on vacation with plaintiff. Nothing in the record suggests D.A. spending overnights with plaintiff would cause the child to suffer any harm.

A-0130-23

IX.

Defendant also argues the judge erred in calculating child support. She contends a supplemental child support award was appropriate based on plaintiff's significant income. We agree and are constrained to vacate the child support award and remand for the Family Part judge to conduct the required statutory analysis, including the consideration of a supplemental award under the Child Support Guidelines.

We review child support awards for abuse of discretion. Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012). Under Rule 5:6A, the Child Support Guidelines "shall be applied in an application to establish or modify child support" and may only be modified for good cause shown. In situations where the family income exceeds $187,200, "the court shall apply the guidelines up to $187,200 and supplement the guidelines-based award with a discretionary amount based on the remaining family income" in conjunction with the factors under N.J.S.A. 2A:34-23. Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A (2026). See also Isaacson v. Isaacson, 348 N.J. Super. 560, 581 (App. Div. 2002) (the "maximum amount provided for in the guidelines should be 'supplemented' by an additional award

A-0130-23

determined through application of the statutory factors set forth in N.J.S.A. 2A:34-23(a)").

Pursuant to N.J.S.A. 2A:34-23(a), in high income cases, a judge should consider, but is not limited to, the following factors in awarding child support:

(1) Needs of the child;

(2) Standard of living and economic circumstances of each parent;

(3) All sources of income and assets of each parent;

(4) Earning ability of each parent, including educational background, training, employment skills, work experience, custodial responsibility for children including the cost of providing childcare and the length of time and cost of each parent to obtain training or experience for appropriate employment;

(5) Need and capacity of the child for education, including higher education;

(6) Age and health of the child and each parent;

(7) Income, assets and earning ability of the child;

(8) Responsibility of the parents for the court-ordered support of others;

(9) Reasonable debts and liabilities of each child and parent; and

(10) Any other factors the court may deem relevant.

The primary consideration in a high-income case is the reasonable needs of the child based on the parties' standard of living. See Isaacson, 348 N.J. Super. at 581. In arriving at an award of child support, a Family Part judge must provide "clearly delineated and specific findings addressing the statutory factors relevant to any award or modification of child support." Loro v. Collino, 354 N.J. Super. 212, 220 (App. Div. 2002).

Here, it is undisputed the parties' collective income exceeds $187,200 which thus constitutes high-income for calculating child support. According to the record, plaintiff earned more than $200,000 throughout the divorce trial and defendant earned more than $150,000 at the time of trial. However, the judge's written decision did not include analysis of the statutory factors governing child support and referred solely to an annexed child support worksheet.

Because the family's income exceeded $187,200, the judge should have considered a supplemental child support award. Additionally, the judge should have included findings of fact as to each of the statutory factors under N.J.S.A. 2A:34-23(a) in arriving at the child support amount. On this record, we are constrained to vacate the child support award and remand for the Family Part judge to analyze child support under the statutory factors and address whether a

A-0130-23

supplemental child support award is appropriate under the parties' current financial circumstances.

## X.

We turn to defendant's argument on cross-appeal that the judge erred in denying her permission to provide health insurance for D.A. According to defendant, plaintiff failed to provide information about his health insurance coverage, which required the parties to have unnecessary contact.

Similar to awarding final decision-making authority, a Family Part judge has discretionary authority in determining which parent shall provide health care coverage for the child. As we previously stated, we will reverse such discretionary judicial decisions only if unsupported by the record.

Here, plaintiff maintained health coverage for D.A. since his birth. There is no evidence in the record that by maintaining the status quo the judge abused her substantial discretion.

## XI.

We also reject defendant's argument that the judge erred in declining to allow her to claim head of household status or child tax credit.

The Internal Revenue Code (IRC) provides that "a qualifying child" may be claimed as a dependent. 26 U.S.C. § 152(a)(1). Among other requirements,

A-0130-23

a "qualifying child" must live at least half the year with the parent-taxpayer claiming the exemption. Id. § 152(c)(1)(B). The child must also receive at least half of his or her support from that parent-taxpayer. See id. § 152(c)(1)(D) (stating that a qualifying child is "an individual . . . who has not provided over one-half of such individual's own support for the calendar year in which the taxable year of the taxpayer begins").

Divorced parents are allowed the exemption as long as the parents provide more than half of "the child's support during the calendar year" and the child "is in the custody of [one] or both . . . parents for more than one-half of the calendar year." Id. § 152(e)(1). The IRC gives the custodial parent the right to the exemption, subject to waiver by that parent. Id. § 152(e)(1)-(2). However, "if the child resides with both parents for the same amount of time during such taxable year, the parent with the highest adjusted gross income" can claim the exemption. Id. § 152(c)(4)(B)(ii). A parent who cannot meet the abode or support test is not entitled to claim the dependent exemption for a child. Id. § 152(c).

Notwithstanding the above provisions, New Jersey case law permits Family Part judges to allocate the exemption to either parent based on equitable principles. See Gwodz v. Gwodz, 234 N.J. Super. 56, 62 (App. Div. 1989)

(recognizing "the legal right of the trial court to equitably enforce an allocation of tax exemptions between the parties"). "The trial court may exercise its discretion in allocating tax exemptions, subject to acceptance by the Internal Revenue Service." Heinl v. Heinl, 287 N.J. Super. 337, 353 (App. Div. 1996) (citing Gwodz, 234 N.J. at 62).

Based on the record, we are satisfied the decision by the judge on this issue did not constitute an abuse of discretion.

## XII.

We next review defendant's contention the judge erred in declining to award her alimony. In support, defendant claims the judge failed to make any findings regarding the parties' marital lifestyle and erred in determining the expenses listed in her CIS were unsupported. We reject defendant's arguments.

"[T]he goal of a proper alimony award is to assist the supported spouse in achieving a lifestyle that is reasonably comparable to the one enjoyed while living with the supporting spouse during the marriage." Crews v. Crews, 164 N.J. 11, 16 (2000). In awarding alimony, the court must consider the thirteen factors enumerated in N.J.S.A. 2A:34-23(b), along with any other relevant factors. Heinl, 287 N.J. Super. at 344-45.

"A Family Part judge has broad discretion in setting an alimony award." Clark, 429 N.J. Super. at 71 (citing Steneken, 367 N.J. Super. at 435). As we previously stated, due to the Family courts' special jurisdiction and expertise in family matters, we accord deference to family court factfinding. Cesare, 154 N.J. at 413. However, in awarding alimony, "the exercise of this discretion is not limitless[,]" and is "frame[d]" by the statutory factors under N.J.S.A. 2A: 34-23(b). Steneken, 367 N.J. Super. at 434.

We will not disturb an alimony award if the Family Part judge's conclusions are consistent with the law and not "manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice." Foust v. Glaser, 340 N.J. Super. 312, 316 (App. Div. 2001) (quoting Raynor v. Raynor, 319 N.J. Super. 591, 605 (App. Div. 1999)). We consider whether the judge's factual findings are supported by "adequate, substantial, credible evidence" in the record and the judge's conclusions are in accordance with the governing principles. Ibid. (quoting Cesare, 154, N.J. at 411-12)

Here, the judge's decision included a review of the factors governing an award of alimony under N.J.S.A. 2A:34-23(b). The judge considered the information in the parties' CIS forms. Specifically, the judge found defendant's expenses in her CIS were "wholly speculative and unsupported." Additionally,

A-0130-23

the judge rejected defendant's assertion her parents paid these expenses as part of a loan because there was no document evidencing a loan or defendant's repayment obligation.

The judge also considered the short duration of the marriage and the parties' ages and health status. Because the marriage lasted only twenty-two months, neither party presented evidence of their marital lifestyle. Additionally, the judge considered the defendant's income, including sums awarded to defendant as part of equitable distribution, which would be available for future investment.

In thoroughly analyzing the alimony factors, the judge correctly concluded defendant was not entitled to alimony. We discern no error or abuse of discretion in the judge's denial of alimony.

## XIII.

We next address defendant's argument that the judge erred in denying her in limine motion to bar Dr. Singer's testimony. She contends Dr. Singer failed to render an opinion based on the parties' existing bi-coastal living arrangements. As we previously stated, we defer to a trial court's evidentiary ruling absent an abuse of discretion. See Invs. Bank, 243 N.J. at 48.

A-0130-23

In light of plaintiff's relocation to New Jersey, Dr. Singer's recommendation is moot. Even if his recommendation was not moot, the judge considered his recommendation and gave it the weight she deemed appropriate based on other expert testimony and evidence adduced at trial. Further, it does not appear that the judge gave any significant weight or consideration to Dr. Singer's custody or parenting time recommendations.

XIV.

We next consider defendant's arguments that the judge erred in denying her request for counsel fees and expert costs. We are not persuaded.

Rule 4:42-9(a)(1) permits a judge to award fees in a family action upon assessing the factors under Rule 5:3-5(c). The judge must also consider the mandates under Rule of Professional Conduct 1.5(a) regarding the responsibility of fees.

Typically, the award of counsel fees and costs in matrimonial actions rests in the sound discretion of the trial court. Williams v. Williams, 59 N.J. 229, 233 (1971). "We will disturb a trial court's determination on counsel fees only on the 'rarest occasion,' and then only because of clear abuse of discretion[,]" Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)), or a clear error in judgment, Tannen v.

Tannen, 416 N.J. Super. 248, 285 (App. Div. 2010) (citing Chestone v. Chestone, 322 N.J. Super. 250, 258 (App. Div. 1999)). Where the case law, statutes, and rules are followed, and the judge renders appropriate findings of fact, a fee determination is entitled to deference. Yueh v. Yueh, 329 N.J. Super. 447, 466-69 (App. Div. 2000); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 4.7 on R. 5:3-5 (2026).

We reject defendant's claimed entitlement to fees and costs due to plaintiff's bad faith throughout the litigation. Defendant overlooks the judge's finding that "[t]he comparable unreasonableness and lack of good faith demonstrated at times by both parties is overall in equipoise." The judge concluded plaintiff was not without blame for belaboring issues at trial. However, the judge also found defendant engaged in similar conduct resulting in a multitude of issues to be resolved by the court.

In denying defendant's application for counsel fees, the judge analyzed the factors under Rule 5:3-5. The judge thoroughly considered the parties' employment, salary, investments, and expenses in determining each party had the financial ability to pay their own attorney's fees and expert costs.

On this record, we discern no abuse of discretion in the judge's denial of defendant's request for attorney's fees and expert costs.

Affirmed in part; vacated and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division